## The People v. John Pitcher and another.

| 15 | 397 |
| 113 | 538 |
| 15 | 397 |
| 142 | 627 |

*Evidence: Declaration of one of several engaged in criminal enterprise.* Where a person receives, with guilty knowledge, property stolen by another, and afterwards sells it, the presumption will arise that the whole transaction was on joint account; and the declaration of either of the parties, made before the sale, concerning the terms and incidents of the common enterprise, are admissible, on the same principle which allows the statements of co-conspirators to be received in evidence.

*Error: Evidence: Charge of Court.* Where evidence is received which could only be made pertinent by other proofs not furnished, and the jury are subsequently instructed, in the absence of such further evidence, to disregard it, the defendant can not allege error upon its admission.

*Concealment of party charged with crime, evidence of guilt.* The absconding of the party charged as principally concerned in stealing the property, and his concealment after his return, may properly be regarded, in connection with proof that defendant desired him to leave, as circumstances bearing upon the question of guilt.

Testimony, that an officer going to serve a subpœna on the defendant while he was, in fact, at home in bed, was informed by his wife, through the window, that he was absent; and also showing, further, that on the next day the defendant falsely stated that he had been away, and had just returned, was properly received as bearing upon guilty knowledge.

*Stolen property: Proof of identity by comparison.* The property stolen consisted of wool in fleeces. It was competent to prove the weight and quality of fleeces shown to a witness by defendant after the theft, and alleged to have been taken from his own sheep, for purposes of comparison; such wool being stored in defendant's house, where the stolen wool was proven to have been carried.

*Heard May 4th. Decided May 14th.*

Error to Lenawee Circuit.

The defendant, John Pitcher, was tried and convicted upon an information for receiving and concealing stolen

property. The fact of the larceny was proved by Arnold P. Graves, from whom the property was stolen. The testimony of David C. Newman, an accomplice, was introduced on the part of the people. This witness testified that he and Samuel Reed stole the property in question, and carried it in the night time to the house of the defendant, who received and concealed it. The leading points made in the bill of exceptions were upon the rulings of the court touching the admission of the testimony of this witness.

The exceptions are stated in the opinion.

*Wm. L. Stoughton,* Att'y General, and *C. E. Weaver,* for the People.

1. The first assignment of error is "In overruling the objection of the counsel for the defendant, to the question put by the counsel for the People to the witness, David Newman, as to the purpose for which he and Reed left the wool at Pitcher's."

The court only permitted the witness to respond to the question, by stating whether he knew of any arrangement between himself and Pitcher, or Pitcher and Reed, as to the purpose of delivering the wool to Pitcher; not, however, testifying to any statement of Reed's on that subject, prior to the delivery of the wool, or some portion thereof, to Pitcher. With this restriction, the question was clearly competent.

But, even if it were otherwise, the defendant would have no cause of complaint. There was no answer to the question. Error will not lie in such a case. — 13 *Mich.* 21; 4 *Parker's Cr. L.* 344, 376.

This principle also disposes of the third assignment of error. No answer whatever was given to the question objected to.

2. The second, fourth, fifth and sixth points made in the bill of exceptions, relate to the statements and acts

of Reed, from the commission of the offense up to the disposition of the wool, and the question raised is clearly set forth in the charge asked and refused, and in that given by the court. There was no error in the admission of this testimony, or in the charge of the court. In all cases of conspiracy, or other crimes perpetrated by several persons, when once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice, in the prosecution of the unlawful enterprise, is considered the act of all, and is evidence against all.— 1 *Greenl. Ev.* §233; 2 *Peters*, 358; 3 *S. & R.* 9; 4 *Shepl.* 293; 1 *Wheat.* 298; 1 *Wheat. Am. C. L.* 702, *and cases there cited.*

The evidence to establish the unlawful combination, need not be conclusive. It is only necessary that it should be sufficient in the opinion of the court, *prima facie*, to establish the fact of combination between the parties, or to be laid before the jury as tending to establish such fact. If there is any such evidence, it becomes a matter of discretion, and can not be reviewed.—1 *Doug. p.* 106; 12 *Mich.* 449.

3. The seventh, eighth, ninth and tenth points made in the bill of exceptions, relate to the introduction by the prosecution of evidence showing the subsequent conduct and flight of Samuel Reed, one of the defendants. Standing alone, this would not be evidence against Pitcher, but it was offered in connection with other evidence, tending to show that Pitcher incited and advised his flight, in order to prevent an investigation into the larceny and concealment of the wool. And when thus brought home to the defendant, it would be competent both as showing his guilty knowledge, and as an attempt to evade justice.— 1 *Whart. Am. C. L.* § 714; 21 *Whart.* 509.

It is not necessary that the relevancy of the evidence should clearly appear at the time it is offered; and if not rendered material by proof connecting it with the issue,

it is sufficient for the court to rule it out of the case. — 1 *Greenl. Ev.* § 51; 8 *Mich.* 357.

The charge of the court places the evidence ⁕on the true ground, and ruled out all except what was actually connected by the proofs, with the defendant.

4. The eleventh assignment of error is in relation to the introduction of the testimony of James K. Johnson, as to what was said and done at the house of the defendant, Pitcher, when he was there in the capacity of deputy sheriff, on the 10th or 11th of June. It clearly appeared that defendant was at home, and it was a question for the jury to ascertain whether he understood and assented to the false statements made by his wife. — 1 *Whart. Am. C. L.* § 696; 3 *Hawkes,* 377; 10 *Geo.* 511.

5. The thirteenth assignment of error is based on the ruling of the court upon the objection to the question put to George Morton, as to the weight of the fleeces raised by defendant Pitcher, as he claimed at the time he examined them at defendant's house.

An examination of the evidence will at once show the materiality of this question. The defendant attempted to show, upon the trial, that the fleeces of wool which he raised were of the same weight as those stolen. For the purpose of rebutting this testimony, it was clearly competent for the prosecution to show that the fleeces which the defendant claimed he raised, at the time he sold his wool, were of much less weight.

In conclusion, we claim that no injury has been done to the defendant. Error, without injury, is no ground for reversing a judgment. — 6 *Mich.* 287; 3 *Hill,* 214; 2 *Hill,* 205; 2 *Comst.* 193; 4 *Denio,* 153.

And, if, inadvertently, in the course of the trial, there was any error, which we do not, however, concede, it was corrected in the charge of the court; and all evidence not clearly competent, was withdrawn from the consideration

of the jury. They could not have been misled, and we submit that the verdict ought not to be disturbed.

*C. A. Stacy*, for defendant Pitcher.

The exceptions to the admission of evidence in this case, were all based on the idea that the defendant, John Pitcher, was to be held responsible for his own acts and statements alone, and not for the admission or acts of Samuel Reed or David Newman, made out of his presence, and not afterwards sanctioned or affirmed by any admission or acts of John Pitcher himself.

1. · A confession is only evidence against the party himself who made it, and can not be used against the others.—5 *Ohio,* 539; 2 *Peters,* 364; 19 *E. C. L.* 428.

2. The statements or letters of another party implicated must appear to have been said or written in furtherance of the common design and not as a mere relation of a past transaction.—*Roscoe Cr. Ev.* 77, 84, *note* 1, 417; 24 *Howe State Trials,* 475; 1 *Phillipps Ev.* 95; 1 *Wharton Cr. Law,* 704, 705; 10 *Pick.* 497; 11 *Id.* 362; 12 *Conn.* 243; 19 *Id.* 250; 8 *Met.* 436; 16 *Me.* 465, 469, 293; 4 *Gray,* 411; 9 *Cush.* 36; 1 *C. and P.* 521; *Greenl. Ev.* §§ 108, 110, 111.

These cases show that in a case like the present the statement of a co-defendant, not on trial, should not be received in evidence against the defendant not present or acquiescing in the truth of the statement. Without the objectionable testimony, there was nothing to connect this defendant with the transaction but a bare statement unreasonable in itself and uncorroborated in anything tending to show the participation of the defendant in the transaction.

3. The requests of the counsel for the defendant to the Circuit Judge should have been granted. There is nothing in the testimony which shows the time of the

sale of the wool except Newman's statement, and that leaves the time indefinite.

CHRISTIANCY J.

The charge against the defendant, Pitcher, was for receiving, buying and concealing thirty-five fleeces of wool, the property of one Graves, knowing the same to have been stolen.

On the trial one Newman testified that he, the witness, and Samuel Reed (the defendant not on trial) stole the fleeces of wool from the barn of Graves, on the night of the 4th day of July, put the same into Reed's wagon, and drove in a circuitous route to the house of the defendant, Pitcher, stopping in the road opposite his house and witness remaining in the wagon; that this was about one or two o'clock on the morning of the 5th of July; that Reed got out of the wagon and went in, and when he came out, defendant, Pitcher, came out with him, having on only his shirt and pants, and being bareheaded and barefooted. That they came out near the gate, and Reed handed Pitcher the wool, who carried it in on the east side of the house, but, after they passed the corner of the house, witness could not see where they went. Reed also took a load of the wool, and so on till they took it all out.

That Reed and Pitcher had a little conversation, but witness did not know what it was; he did not see where they took the wool; he never saw it again, and knew nothing more of it except what was told him by Reed.

There was also evidence tending to show that Pitcher sold the wool on the 20th and 28th of July.

Newman was asked for what purpose he and Reed left the wool at Pitcher's. To this, exception was taken, but the witness was allowed to answer. We think the question was relevant and admissible, and if it had not been so, there was no error, as the question elicited no evidence,

except that witness knew of no arrangement with Pitcher except what Reed told him, without stating what it was.

But the same witness was afterwards allowed, in answer to other questions duly objected to, to state what Reed told him after leaving the wool at Pitcher's, and acts of Reed in reference to the matter, from which it appeared in substance that on the way home, after leaving the wool at Pitcher's, Reed told witness that Pitcher would secrete it among his wool and would dispose of it for them when he did his own, and that they would have one-third each—that witness and Reed ought to have more but that Pitcher would probably want a third—that some ten days after this, Reed said something to witness about some sheep and wool, and said he would like to have some money pretty soon, and wished Pitcher would sell the wool. About ten days after the wool was left at Pitcher's, witness saw Reed and Pitcher together by themselves, but don't know what the conversation was—saw them together after that time. That from two to four weeks after the wool was left, Reed paid witness about seventy-five dollars which he represented to be for witness' share of the wool; Reed figured the amount and represented it to be one-third of the amount for which the wool had been sold. Exceptions were taken in due form to all this testimony.

The court charged the jury upon this point that if they believed the statements of Newman as to the delivery of the wool to Pitcher, and his receipt of the same for the purpose of concealing and disposing of it, on the request or by the understanding of Reed, then the statements and acts of Reed testified to in the case, from that time up to the disposition of the wool by defendant, were competent evidence. This testimony of Newman and this charge raise the main question in the case. The general rule is well settled that, where several persons are engaged in one common unlawful enterprise, whatever is said or done by any one of them in the prosecution of the common

enterprise, or while it is still in progress, is evidence against all the parties to it. But after the common purpose or enterprise has been fully completed or terminated, the statements of one or more of them, in reference to any things connected with that past transaction, become as to the others, *res inter alios*, mere hearsay, neither binding upon nor evidence against any of the others, for the reason that they are no longer supposed to be acting with one common design, and one is in no sense the agent of the other.

The common design or concert in a common enterprise is the only basis for the admission of such statements. But like most other facts this is not required to be established by positive proof. It may be and generally is supported only by circumstantial evidence. And it is sufficient that there be evidence tending to establish the fact, and from which the jury may fairly infer it. The weight of the evidence upon this, as upon the other facts in the case, is for the jury.

Independent, then, of the statements of Reed (which upon the question of their admissibility are to be excluded), was there evidence in the cause fairly tending to show that Reed and Pitcher were engaged in a common criminal enterprise, with reference to this wool, which was yet in progress or uncompleted when those statements were made?

The only evidence that can be claimed to have had such tendency is that of Pitcher's receiving the wool at the time of night and under the circumstances mentioned by Newman, and his conversation with Reed at the time, the purport of which is not known. That this evidence had a strong tendency to show that Pitcher received the wool with the guilty knowledge that it had been stolen, will not be questioned. And as it would be unreasonable to infer that Reed and Newman were stealing the wool out of pure benevolence toward Pitcher, the tendency of the evidence was to show that

the enterprise was for the common benefit of the three; and that it was to be in some way disposed of for this purpose. It was not a kind of property which could be used or enjoyed in its then present shape. The evidence, it is true, is not such as absolutely to exclude the hypothesis that Pitcher might have purchased it of Reed, and paid or agreed to pay for it such price as to give each a share of the adventure. But, as Newman, who was there, knew or heard nothing of this kind, and no evidence of the kind appears, it can not be said that the evidence tends at all to prove such sale to Pitcher; on the contrary, much the more natural inference, it seems to me, is either that the wool was to be sold by Pitcher for the common benefit, or kept for the joint benefit of all, to be disposed of by Reed or Newman on their joint account, when a favorable opportunity should occur; and in either case the inference to be drawn, and, therefore, the tendency of the evidence, would be to show that the common enterprise was to continue until the wool should be sold and the proceeds distributed. As no statements of Reed after the distribution of the proceeds were given in evidence, and the court charged the jury, in effect, that no statements of Reed, made after the disposition of the wool by Pitcher, could affect him, I think there was no error upon this point.

There was evidence tending to show that defendant, Pitcher, some time after the sale of the wool, and before either of them had been prosecuted, was anxious that Reed should run away. And a witness was allowed under objection to testify that he (the witness) drew up a note for Reed, payable to defendant, Pitcher, for fifty dollars, just before Reed did actually leave, which was signed by said Reed, and left with the brother of Pitcher, who was present when it was drawn. But there was no evidence tending to show that the note

ever came to the defendant's hands, or that he knew of its existence, or that he paid any money upon it. This was certainly no evidence against the defendant without connecting him with it; and its admission might have been error had it been allowed to go to the jury; but the Court charged the jury that the fact of signing the note is of no import or consequence unless the same reached the defendant. This, in effect, took the evidence from the jury.

Testimony was allowed to be given that Reed was accused of the offense, that he went away and was gone some time, that when he returned he kept concealed and endeavored to evade the officers. To these matters exceptions were taken. The bearing of this evidence upon the defendant was very slight, but, taken in connection with other testimony going to show defendant's anxiety that Reed should run away, I am inclined to think there was no error in its admission.

The prosecution was allowed to prove, under objection, that an officer on going to defendants' house about eleven o'clock at night to serve a subpœna upon him, knocked at the door for some time without effect, and, failing in this, went to a window and rattled it, when, after some time, defendant's wife called out and asked who was there and what he wanted; and, the officer having answered and told his business, she told him her husband was not at home, but was gone to Ohio to buy cattle. He finally persuaded her to strike a light, showed her the subpœna, and gave her a copy through the window. Proof was also given that the defendant was in the house in bed at the time; that another man who was in bed in the same house heard the whole proceeding; that the next day Pitcher went to Adrian and falsely stated that he had just come in on the cars from Ohio. I see no legal objection to this testimony. It tended to show that he must have heard all that took place at his

house while the officer was there; and that he was in fear of arrest, which could ordinarily arise only from a consciousness of guilt.

There was no error in allowing the witness, George Morton, who had been at defendant's house and seen the fleeces of wool, represented to have come from defendants' sheep, to testify as to the kind and weight of the fleeces.

It had a tendency, in connection with the other evidence, showing the kind of wool sold by him, to show that the stolen wool was among that sold.

The charge of the court was in accordance with the views I have expressed.

I think there is no error apparent upon the record; that it should be certified to the Circuit Court for the county of Lenawee that there is no error in the proceedings, and that judgment should be given in that court upon the verdict.

MARTIN Ch. J. and COOLEY J. concurred.

CAMPBELL J.

The chief error complained of in this case is the admission of the statements of Reed, one of the thieves, to his associate, Newman, concerning the disposition to be made of the stolen property by Pitcher. These statements were made in Pitcher's absence, and after he had received the goods. If true, they tended to show that he was to dispose of the property, and pay over two-thirds of the proceeds.

I have very great doubts whether direct and legal proof of such an arrangement would render any statements of the other parties, who were merely passive, and had no further parts to perform, evidence against Pitcher, who was to be the sole actor. But without examining into this question, I have not been able to

perceive the slightest proof in the case tending to show that Pitcher had any further acts to perform on behalf of the rest, after the goods were traced into his possession, and therefore there was no ground for receiving the statements, which were only admissible on the theory of a continuing conspiracy. Newman swore positively that he had no knowledge of any such purpose, except from the subsequent statements of Reed. The reception of stolen goods has no necessary tendency to prove a purpose to sell on commission, any more than a purchase for cash. Neither the law nor common experience can raise any presumption concerning any specific rule of business in such cases. No bargain is proved, and if one is assumed, it is a pure conjecture, which, without the statements of Reed, would have had no foundation whatever.

It seems to me that to admit this evidence was equivalent to proving the conspiracy by the statements, and then basing their admissibility on the conspiracy, which was not otherwise established.

I think there was error in this, and that the verdict should be set aside and a new trial granted. Upon the other points I concur with my brethren.