## The People v. William G. Saunders and another.

*Order of proof: Discretion.* An exception which regards the order of proof merely will not ordinarily be considered ; except in a clear case of abuse, the discretion of the court below in this regard will not be reviewed on error.

*Conspiracy: Evidence.* It is competent in trials for conspiracy to connect the several parties charged by evidence of their separate acts and statements.

*Evidence: Res gestae.* On a trial for a conspiracy to induce a firm of retail liquor dealers to violate the revenue law by a sale of a larger quantity of liquor than such dealers are allowed to make, for the purpose of extorting money from them, it is competent to show that, at the same time and place that complaint was made against such firm for violating the revenue law, a similar complaint was made by the same party against another firm for a violation of the same law, where the two complaints are so inseparably associated in time that each is intimately connected with the *res gestae* of the other.

*Statements: Evidence: Conspiracy.* On such a trial, the statements of one of the defendants, made on the day following the making of the complaint against such firm, and while it was still pending, that he expected to make several hundred dollars out of it, and that another of the defendants was concerned with and instigated it, are admissible against such other defendant, where he has been connected with the conspiracy by independent evidence.

Evidence, on such a trial, that one of the defendants advised the others, before the purchase of the liquor, what the law applicable to the case was, and continued consulting with them after they had succeeded in trapping the intended victims into a violation of the law, and then endeavored to persuade the accused to settle the prosecution by the payment of a large sum of money, is sufficient to warrant the submission of the case to the jury as to such defendant.

Upon a charge of conspiracy to induce others to violate the law by a sale of liquor, in order that the conspirators might make profit out of their fears of prosecution, it is immaterial whether the purchase by itself be innocent in the purchasers, or whether the attempt at compromise be legal or not. It is the unlawful conspiracy that constitutes the crime and not acts done in pursuance of it.

*Requests to charge.* Under our practice, where requests to charge, instead of being read in presence of the jury, are submitted to the judge in writing, and if marked by him "refused," the jury need not know what instructions are declined, a verdict will not be set aside on exceptions because of such refusal, if the same ground has been properly covered by the written charge actually given.

*Charge to the jury.* Where, upon a trial for conspiracy, the charge to the jury, in reference to statements of one of the conspirators, is fair and correct in principle, but is in some parts by an oversight applied by the judge to one of the defendants only, and no notice is taken at the time of the omission expressly to apply the same instruction to the case of another defendant, such other defendant will not be heard in a court of review to complain thereof.

*Submitted on briefs April 30. Decided May 14.*

Exceptions from Calhoun Circuit.

*Dwight May, Attorney General*, for the People.

*Hughes & O'Brien*, for the defendants.

COOLEY, J.

These defendants were indicted with one Winters for a conspiracy to induce the firm of Amberg & Helmer, who were retail liquor dealers, to violate the United States revenue laws by a sale of a larger quantity of liquor than was allowed to be made by such dealers, in order that they might extort moneys from said Amberg & Helmer. Winters pleaded guilty, and the other defendants were put on trial. The prosecution claimed to have shown on the trial the conspiracy; that in pursuance thereof Winters bought of Amberg & Helmer six gallons of whisky; that the conspirators thereupon endeavored to alarm said firm into the payment of a considerable sum of money to save themselves from being prosecuted under the revenue laws, and failing in this, instituted a prosecution against them. The defendants being convicted, now allege certain exceptions to the rulings of the circuit judge.

1. It is complained that the acts and declarations of Winters were allowed to be given in evidence before proof had been made of any conspiracy. As this exception regards the order of proof merely, we think it is not one that can avail in this court. The proper order of proof in cases of conspiracy is, first to give evidence of the unlawful combination, and afterwards to show the acts of the conspirators in pursuance thereof, or in some manner to connect them severally therewith. But it often happens that the existence of the conspiracy is only made out by inference from the acts and declarations of the several parties thereto; and to exclude evidence of these until the conspiracy is established in some other way, would, in many cases, give the

guilty parties immunity. There is no class of cases in which it is more important that the circuit judge should have a large discretion as to the order in which evidence should be received; and this discretion cannot be reviewed on error except in clear cases of abuse, of which we discover no proof here. The opening of the case by the prosecution and any further explanations that may be called for, will generally enable the judge to exercise his discretion in such manner as, while not shutting out proper evidence, shall at the same time protect the accused from being prejudiced by testimony which, in the end, shall prove irrelevant, or not legally competent to charge the party on trial. And whenever facts are proved which depend upon other facts to give them a bearing upon the guilt of the accused, if such other facts are not put in, he has his remedy by motion to strike out the evidence.

In this case it was sought to connect the several parties charged by evidence of their separate acts and statements. This was, of course, competent. The danger from this is that the statements of one implicating the others as well as himself, may tend unjustly to prejudice the case of the others; but this must be guarded against by proper instructions from the judge.

2. It is next objected that the court erred in admitting evidence that, at the same time and place that complaint was made against Amberg & Helmer, complaint was made by the same party against another firm for a violation of the same law. These two complaints were so closely connected that in proving one it was almost impracticable to avoid the mention of the other. But even if it had been practicable, we do not think it was essential. If there was a conspiracy in the one case, there probably was in the other, and the evidence of the one would throw light upon the motives inducing the other. Mr. Roscoe justly says

25 MICH.—16.

that, "The evidence in conspiracy is wider than, perhaps, in any other case. * * Taken by themselves, the acts of a conspiracy are rarely of an unequivocally guilty character, and they can only be properly estimated when connected with all the surrounding circumstances."—*Ros. Cr. Ev.*, *88;* and see *Hunt's case, 3 B. & Ald., 573.* There are cases in which, a party being charged with fraud in a particular transaction, it was held competent to give evidence of similar fraudulent transactions with other persons:— *Bottomley v. United States, 1 Story, 135; Rankin v. Blackwell, 2 Johns. Cas., 198;* and these seem very much in point here. But we do not decide that the evidence of the other complaint would have been admissible, if it had been a distinct transaction at another time; it is enough that the two were so inseparably associated in time, and doubtless in motive also, that each may properly be said to have been intimately connected with the *res gestae* of the other, and therefore admissible in evidence with the other surrounding circumstances.

3. It was also objected that the prosecution was allowed to give evidence of statements made by Winters on the day following the making of the complaint, going to show that he expected to make several hundred dollars out of it, and that Saunders was concerned with and had instigated it. This was while the complaint was pending, and if Saunders was connected with the conspiracy by independent evidence, we think was admissible against him as well as against Winters. And we also think there was sufficient evidence, exclusive of the statements of Winters and Gregg, to warrant submitting the case of Saunders to the jury.

It was proved, and not disputed, that Saunders was the adviser of Winters and Gregg, as to what the law applicable to the case would be, before the purchase of the whisky

was made. It appears that he was not a lawyer, but had been connected with the revenue service; and while the previous consultation might have been for no improper purpose whatever, it becomes exceedingly suspicious when we find it continued after the parties consulting with him had succeeded in trapping an intended victim into a violation of the law. And when Saunders appears on the stage afterwards endeavoring to persuade the accused parties to settle the prosecution by payment of a considerable sum of money, we cannot think the inference of the jury, that he was party to a criminal conspiracy which had such a settlement as its ultimate result, was in any respect unwarranted.

4. It is also assigned for error that the court refused to give to the jury, on request of the defendants, the following instructions:

"4. If the jury find that Winters bought of Amberg & Helmer six gallons of whisky, and paid them for it with the express purpose and intent of prosecuting them for such sale, this was not an illegal act but an entirely legal one by itself.

"5. In order to convict either of the defendants under this information, it must be proved to the satisfaction of the jury and beyond all reasonable doubt, that the defendants, directly or indirectly, agreed with each other to act in concert and with a common design to induce the said Amberg & Helmer to sell the liquor by illegal means, and a mere application to them to sell, leaving it optional whether they would sell or not, would not be illegal means.

"8. The offer to get the matter settled for three hundred dollars was not an illegal act, but a legal one.

"9. To justify the jury in convicting Saunders, they must find that he knew beforehand that the purchase was going to be attempted, and that it was to be induced by illegal and improper means, and he must have consulted

and advised it, and been entitled to share in the profits, or hearing these things afterwards, endorsed and assented to them.

"10. If the jury find from the evidence that Winters and Gregg combined together to attempt the purchase of the liquor in the ordinary course of business, and without making any false or fraudulent representations to induce the sale, and without the knowledge of Saunders, and after the sale Saunders conceived the idea of settling it for Amberg & Helmer for three hundred dollars, and offered to do it for that sum, then the defendants are not guilty."

The idea pervading these requests is, that the purchase of the liquor being entirely legal, there could have been no criminal conspiracy unless criminal means were resorted to for the purpose of effecting such purchase. This, however, is a misconception of the charge on which these parties were placed on trial. They are accused of a conspiracy to induce the firm of Amberg & Helmer to violate the law in order that the conspirators might make profit out of their fears of prosecution. It is wholly immaterial whether, in the absence of any conspiracy, the purchase would have been innocent in the purchasers or not, or whether, considered by itself, there was any illegality in the attempt at a compromise. It is the unlawful conspiracy that constitutes the crime, and not acts done in pursuance of it.— *People v. Richards, 1 Mich., 216 ; Alderman v. People, 4 Mich., 414 ; People v. Clark, 10 Mich., 310.*

5. The most serious question in the case, arises from the refusal of the court to charge as desired by the fourteenth and fifteenth requests of defendants, which were as follows:

"14. For the purpose of proving a conspiracy, the declarations of one defendant are not evidence against the other, but are only evidence against the defendant who makes them.

"15. The jury are not warranted in considering the statement of Winters or of Gregg as evidence against Saunders of a conspiracy, and they are not to regard the statement proved to have been made by Winters, as evidence against Gregg of a conspiracy."

Under our present practice, requests for instructions are submitted to the judge in writing, instead of being read in the presence of the jury; and if he marks them "refused," the jury need not know what instructions are declined. There is, therefore, not the same danger of misleading the jury by a refusal of proper instructions supposed to be covered by the charge as written out by the judge, as would exist if the jury listened to the request and refusal. These requests may be said, perhaps, to state the law correctly, though if given it might have been proper to accompany them with explanations, lest the jury might not discriminate between declarations relied upon to prove a conspiracy, and those made subsequent to the facts establishing the unlawful combination, and while the conspiracy was in progress. The circuit judge, it is presumed, refused these requests because he supposed he had covered the same ground and made the proper discriminations in his charge. By that he instructed them as follows:

" The statements of Winters or of Gregg, or their acts indicating a common purpose between them for the object alleged, will not be allowed to affect the defendant Saunders, unless you are convinced by the evidence that the latter was associated with them. If you find that he was so, then their words and acts are, for the purpose of this case, his.

" The proof upon which the prosecution seems to rely for this purpose, is that in relation to a conversation with him at his office, and the conversation between him and Amberg & Helmer, or with one of them. It is your exclu-

sive province to pass upon the proof upon that subject, as well as all the proof in the case.

"There are other proofs, consisting of circumstances, which may bear upon the same point, and to which your attention has doubtless been called,—circumstances which are to be considered in all their relations, not only in the direction of the theory of the prosecution, but equally in the direction of the theory of the defense, or rather, in the direction of the innocence of the respondents."

This charge was fair towards the defendants, and was evidently intended to be full. If it fails in being so, it is in not guarding the defendant Gregg as carefully as it did the defendant Saunders. The reason for this probably was, that the evidence of the unlawful conspiracy between the defendants Winters and Gregg was so strong independent of Winters' statements, that the judge would not be likely to consider it seriously in contest, and doubtless had the case of Saunders alone in mind when he prepared his charge. Indeed, there would seem to be little question, if the jury believed the evidence, that Gregg was privy to the design of Winters from the beginning; and the statements of Winters were not needed to establish his complicity. It is not surprising, therefore, that, in charging upon this point, the judge neglected the proper caution as to the case of Gregg; but as he laid down the principle of law correctly, we can hardly conceive that the jury would fail to apply it to the case of one defendant when expressly told to apply it to the other. At any rate, as no notice was taken at the time, of the omission of the judge expressly to apply this instruction to the case of Gregg, which was plainly an oversight, we think there is no reason to suppose that the parties then supposed the omission to be prejudicial; and Gregg, therefore, should not be heard to complain now.

And finding no other error in the case, the circuit court will be advised to proceed to judgment.

CHRISTIANCY, CH. J., and CAMPBELL, J., concurred.

GRAVES, J., did not sit in this case.