### PEOPLE v. BELLER.

1. CRIMINAL LAW—CONSPIRACY—ADMISSIONS—EVIDENCE.

Acts and declarations of one conspirator done or made while the conspiracy is pending, and in furtherance of its object, are admissible against all, but after the conspiracy has come to an end, the admissions of one conspirator are not admissible against the others.

2. SAME—CONSPIRACY—RES GESTAE.

    The *res gestae* of a conspiracy is limited to the period during which the parties are engaged in the unlawful enterprise.

3. SAME—CONSPIRACY—RES GESTAE—EVIDENCE.

    In prosecution for conspiracy in which it is claimed defendant and another conspired to murder defendant's wife, admission of declarations of the other person, made after she had been arrested, was improper as part of *res gestae* of the conspiracy especially where the statements made were designed to implicate defendant and not to further the conspiracy.

4. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.

    Conspiracy may be established by circumstantial evidence and positive proof is not required but the circumstances must be within safe bounds of relevancy and be such as to warrant a fair inference of the ultimate facts.

5. SAME—EVIDENCE—MURDER OF SPOUSE.

    The mere presence of desire or temptation without other proof is not sufficient to warrant complicity of defendant with another woman, with whom he had associated clandestinely for four years, in a conspiracy to murder his wife.

6. CRIMINAL LAW—CONSPIRACY—EVIDENCE—ADMISSIONS.

    Stenographic statement taken from defendant on eve of his arrest for conspiracy to murder his wife wherein "blame" he admitted was for his intimacy with another woman, who desired wife's removal, rather than an acknowledgement of a part of any design to bring about the result the other woman sought, did not constitute a confession on his part, nor prove *corpus delicti.*

    Appeal from Recorder's Court for the City of Detroit; Maher (John J.), J. Submitted June 13, 1940. (Docket No. 89, Calendar No. 40,564.) Decided September 6, 1940.

    Louis Beller was convicted of conspiracy to commit murder. Reversed and defendant discharged.

    *Thomas Read,* Attorney General, *Duncan C. McCrea,* Prosecuting Attorney, *William L. Brunner* and *John D. O'Connell,* Assistant Prosecuting Attorneys, for the people.

*Lewis J. Weitzman* and *Paul J. Wieselberg,* for defendant.

Butzel, J. Louis Beller was convicted of conspiring with Annie Warheit to murder Mrs. Beller. Beller was a successful wholesale poultry merchant in the city of Detroit. He conducted his business at a store owned by himself and his wife near the eastern market. Mrs. Beller worked with him whenever she felt able, absenting herself only on Fridays and Sundays. Mrs. Warheit had been a good friend of the Bellers, having been a frequent guest at their home prior to the time Bellers moved to a new home on Woodingham Drive. Mrs. Warheit's son married a daughter of the Bellers, but it appears that he had little to do with his mother after his father was granted a divorce in 1935. Mrs. Beller had been sick for several years, suffering from nervousness and other ailments associated with her age of life; Mrs. Warheit accompanied her on visits to her physician. Mrs. Warheit knew that the physician had prescribed a tonic, and that it was kept in the electric refrigerator in the Beller home, for she herself had administered it to Mrs. Beller when the latter was ill in bed. This, however, was before the Bellers moved to their new home and before the friendship between Mrs. Beller and Mrs. Warheit was broken off because she became a part of a domestic triangle.

Mrs. Warheit had worked part time with the Bellers at their poultry business but ceased to work there because of disagreements. Mr. Beller nevertheless furnished her with a weekly allowance, bought her used automobiles and a fur coat, and continued to see her clandestinely at a room she rented, for which he paid. These meetings ran on for about four years. Except for these transgressions Mr.

Beller seemed to be otherwise devoted to his wife, having bought her an expensive fur coat, a high grade new automobile, sent funds to her impoverished sister, maintained life insurance with her as beneficiary, bought a new home in their joint names, and left the old home in her sole name and permitted her to retain whatever income there was from it.

To get Mrs. Beller out of the way, Mrs. Warheit sought out a man who had acted as a dealer in a gambling house and offered him $25 if he would put poison in the medicine Mrs. Beller kept in the refrigerator at home. He was told that there had been some trouble with the refrigerating mechanism and that he could disguise himself as a repair man to gain access to the home. He declined to do the job himself, but stated that he could get another to do it, whereupon he told the story to a detective who disguised himself as a refrigerator service man. The detective met Mrs. Warheit and received from her a bottle of muriatic acid and $20. They drove up to the Beller home and Mrs. Warheit was immediately placed under arrest. Shortly after the arrest, she told a detective that Mr. Beller was in the conspiracy with her. At the police headquarters she made a statement to a stenographer which implicated Beller, and he was promptly arrested. Beller made a statement that evening in which he denied any part in the conspiracy, but made the following remarks which are relied upon by the people as a confession:

"*Q.*  You didn't want to rent a room?

"*A.*  No; and she used to go in and write letters, and she used to send people, and call me up, and I was in business and I couldn't get out—and one time she comes right in the store, and the bookkeeper was there, and she pretty near want a fight then, and I

say to her 'Don't bother me' and she say to me 'Well, I am going to take your life and shoot you,' and I say 'All right, go ahead, but don't bother me' and she say 'I am going to see your wife,' and I say 'Don't bother my wife; just talk to me, but don't bother her,' see—and I am to blame for everything, myself."

Several questions are raised in this appeal. The main question is whether there is any competent proof that Mr. Beller conspired to commit murder. The prosecution relied to a great extent on the extra-judicial admissions of the defendants. It is true that the acts and declarations of one conspirator done or made while the conspiracy is pending, and in furtherance of its object, are admissible against all; but after the conspiracy has come to an end, the admissions of one conspirator are not admissible against the others. *Logan* v. *United States,* 144 U. S. 263 (12 Sup. Ct. 617); *Brown* v. *United States,* 150 U. S. 93 (14 Sup. Ct. 37); *People* v. *Saunders,* 25 Mich. 119; *People* v. *Wysocki,* 267 Mich. 52; *People* v. *Parker,* 67 Mich. 222 (11 Am. St. Rep. 578); *People* v. *Lewis,* 264 Mich. 83; *People* v. *Chambers,* 279 Mich. 73. The rule was well stated by Justice CHRISTIANCY in *People* v. *Pitcher,* 15 Mich. 397:

"The general rule is well settled that, where several persons are engaged in one common unlawful enterprise, whatever is said or done by any one of them in the prosecution of the common enterprise, or while it is still in progress, is evidence against all the parties to it. But after the common purpose or enterprise has been fully completed or terminated, the statements of one or more of them, in reference to any things connected with that past transaction, become as to the others, *res inter alios,* mere hearsay, neither binding upon nor evidence against any of the others, for the reason that they are no longer

supposed to be acting with one common design, and one is in no sense the agent of the other.''

Purporting to abide by this principle, the trial court ruled that Mrs. Warheit's declarations made immediately after her arrest in front of the Beller home were admissible as part of the *res gestae* and were to be considered by the jury as they related to Beller if the people proved a conspiracy. This was error. The *res gestae* of a conspiracy is limited to the period during which the parties are engaged in the unlawful enterprise. *People* v. *Lewis, supra; People* v. *Chambers, supra.* When the arrest was made, the joint enterprise was ended, and the declarations of Mrs. Warheit were no more binding on Beller than those made subsequently at the police headquarters, and the jury should have been so instructed. This evidence was not to be considered in determining Beller's guilt. An examination of this phase of the record satisfies us that the statements after the arrest were designed to implicate Beller and not to further the alleged conspiracy. The rule which excludes such implication is one of safety; defendant was not accorded the protection to which he was entitled.

While the error just discussed would require granting a new trial, we think from an examination of the record as a whole that the proofs adduced were insufficient to sustain a verdict of conviction, and the jury should have been so instructed. It has long been recognized that the conspiracy may, and generally is, established by circumstantial evidence, and that positive proof is not required. *People* v. *Pitcher, supra.* But the circumstances must be within safe bounds of relevancy and be such as to warrant a fair inference of the ultimate facts. We may assume, but we do not so hold, that Mr. Beller possibly might have had a motive for the com-

mission of the crime; but the mere presence of desire or temptation without other proof is not sufficient to warrant a conclusion of complicity.

The prosecution urges that Beller confessed his part in the crime in his stenographic statement on the eve of the arrest. There might be found an isolated statement acknowledging "blame," but if this is wholly stripped from its context, it is at best merely a conclusion of the declarant and not substantive, probative proof. *People* v. *Dellabonda,* 265 Mich. 486. When returned to its background, the declarant only acknowledges blame for his intimacy with Mrs. Warheit which led to her desire to remove an obstacle from her path. It in no way is an acknowledgment of a part in any design to bring about this result. The *corpus delicti* was not shown.

As there was no competent testimony showing respondent's part in the conspiracy, the judgment of conviction must be reversed, and the respondent is discharged from custody.

Bushnell, C. J., and Sharpe, Chandler, North, McAllister, and Wiest, JJ., concurred. The late Justice Potter took no part in this decision.