PEOPLE v BERRYMAN

PEOPLE v VAN METER

1. EXTRADITION—OTHER CRIMES—OBJECTION—ASYLUM STATE.

An accused who is extradited may be tried for crimes other than those cited in the extradition demand; any objection to the extradition proceedings must be made in the asylum state, before the accused submits to the jurisdiction of the charging state (MCLA 780.27).

2. CONSPIRACY—EVIDENCE—PRIOR ACTS.

Evidence of prior druggings is admissible, where defendant is charged with conspiracy to commit robbery by drugging his victims, to show (1) intent, motive, and absence of mistake, and (2) scheme, plan, or system with respect to the conspiracy and its results (MCLA 768.27).

3. CRIMINAL LAW—PROSECUTOR'S COMMENTS—HARMLESS ERROR.

Comments made by the prosecutor during his closing argument mentioning the fact that the defendants cannot be compelled to testify, constituted harmless error where no objection was made, a curative instruction was given, and the Court of Appeals is convinced that it was harmless beyond a reasonable doubt (MCLA 600.2159).

4. CONSPIRACY—EVIDENCE—EXTRAJUDICIAL STATEMENTS—ADMISSION.

The admission, in a trial for conspiracy, of an extrajudicial statement by one defendant that is unconnected with the conspiracy, without a limiting instruction, is prejudicial to a codefendant against whom the evidence is tenuous and entirely circumstantial, and constitutes error.

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Extradition §§ 72, 74.
[2] 16 Am Jur 2d, Conspiracy § 35.
[3] 21 Am Jur 2d, Criminal Law § 356.
[4] 16 Am Jur 2d, Conspiracy § 36.
[5] 21 Am Jur 2d, Criminal Law § 337.

5. Criminal Law—Extrajudicial Statement—Right to Confronta-
tion.

> The constitutionally-guaranteed right of confrontation is not
> violated by the admission of an extrajudicial statement by one
> codefendant, in a joint trial for conspiracy to commit unarmed
> robbery and murder, when that defendant does not testify in
> his own behalf so as to give the other codefendant the opportu-
> nity to cross-examine him, where it cannot be said that the
> statement admitted definitely implicated the other codefendant
> (US Const, Am VI).

Appeal from Wayne, Thomas Roumell, J. Sub-
mitted Division 1 June 6, 1972, at Detroit. (Docket
No. 12190, 12709.) Decided October 25, 1972. Leave
to appeal as to Berryman applied for.

Phillip W. Berryman and John L. Van Meter
were convicted of conspiracy to commit unarmed
robbery and first-degree murder. Defendants ap-
peal. Affirmed as to defendant Berryman and re-
versed for new trial as to defendant Van Meter.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Edward R. Wil-
son, III,* Assistant Prosecuting Attorney, for the
people.

*Perry T. Christy,* for defendant Berryman on
appeal.

*James W. Burdick,* for defendant Van Meter on
appeal.

Before: J. H. Gillis, P. J., and McGregor and
Borradaile,* JJ.

J. H. Gillis, P. J. The defendants in this case
were charged with conspiracy to commit unarmed

---

* Probate judge, sitting on the Court of Appeals by assignment.

robbery,[1] and first-degree murder.[2] They had a jury trial in the circuit court for Wayne County. Both defendants were found guilty on each count, and appeal.

At trial, Miss Alexandria Telly testified that she was approached in a Detroit bar on the evening of November 4, 1970, by defendant Berryman and asked to help drug a man and steal his money. For this she was promised $100. After accepting the deal she and Mr. Berryman went to another bar where Miss Telly was introduced by defendant Van Meter to Dennis Elmer Pack, the intended victim. There followed a series of moves to other bars, including the one owned by Mr. Pack. During this time it is alleged that Berryman drugged the drink of Mr. Pack in order to render him unconscious so that he could be robbed. Miss Telly and Pack went to the Crest Motel at Pack's suggestion. There they had intercourse. Shortly after Pack complained of dizziness, Miss Telly passed out. Mr. Pack was last seen alive by the motel desk clerk when he turned in his key between 2:30 and 3 a.m. on November 5, 1970. Mr. Pack's body was found in the back of his own automobile on November 14, 1970, in a parking lot of Ford Motor Company. The autopsy disclosed that he was killed by two shotgun wounds. Further evidence revealed that at the time the body was found Mr. Pack had been dead at least 48 hours, and possibly as long as 10 days. There was no evidence that he had been drugged.

Although defendants were tried jointly below, they raised different issues on appeal.

# I

Defendant Berryman was arrested in Florida on

---

[1] MCLA 750.157a, 750.530; MSA 28.354(1), 28.798.

[2] MCLA 750.316; MSA 28.548.

November 17, 1970, on other charges. He voluntarily returned to Michigan pursuant to an extradition demand based on warrants in Macomb County for extortion. On December 3, 1970, defendant was released to Wayne County authorities and charged herein.

Defendant's counsel on appeal claims error alleging that it is unfair to try an accused for crimes other than those cited in the extradition demand. Michigan statute[3] and case law is clear in this area.

"No right of asylum. No immunity from other criminal prosecutions while in this state. After a person has been brought back to this state by, or after waiver of extradition proceedings, he may be tried in this state for other crimes which he may be charged with having committed here as well as that specified in the requisition for his extradition." MCLA 780.27; MSA 28.1285(27).

Since defendant raises the issue here for the first time, *People v Sterbins,* 32 Mich App 508 (1971), is applicable. There the Court said:

"So that there will be no confusion, however, we briefly point out that challenges to extradition proceedings must be made in the asylum state; upon submission to the jurisdiction of the charging state, opposition to the extradition comes too late. *Pettibone v Nichols,* 203 US 192; 27 S Ct 111; 51 L Ed 148 (1906)."

## II

Defendant Berryman contends next that it was error to admit evidence of prior druggings. He claims that these prior acts show no scheme, plan

---

[3] MCLA 780.1 *et seq.;* MSA 28.1285(1) *et seq.,* Uniform Criminal Extradition Act.

or system as pertains to murder of his victims, thus the admission of testimony was erroneous under the Michigan similar acts statute.[4] Since the defendant here was charged with conspiracy to commit robbery by drugging victims and then taking their money, the admission of this evidence was probative of the conspiracy. Thus, those proofs which were admitted were not offered to show a general disposition or proclivity to crime but were proper to show both (1) intent, motive, and absence of mistake, and (2) scheme, plan, or system with respect to the conspiracy and its results.

In any case the trial court scrupulously adhered to the rule in *People v Kelly,* 26 Mich App 148 (1970), *aff'd* 386 Mich 330 (1971). In fact, the trial court took pains to hear proffered testimony out of the presence of the jury. There was no objection. Following each witness's testimony he gave full and explicit instructions limiting the purpose for which evidence was admitted.

## III

Defendant Berryman raises an issue of prosecutorial misconduct. During his closing argument the prosecution said:

"Alright. Now, finally, to establish the robbery-murder, the felony murder, we are relying almost entirely upon circumstantial evidence. Nobody was there when the robbery took place. Nobody that we can bring here to testify. The defendants here, yes, but we can't get them to testify."

There was no objection. This presents a rather close issue and the prosecutor should be cautioned not to comment on the fact that the defendants

[4] MCLA 768.27; MSA 28.1050.

cannot be compelled to testify. Fortunately, in this case the trial court gave excellent curative instructions. We find this harmless error within the rule of *Chapman v California,* 386 US 18, 24; 87 S Ct 824, 828; 17 L Ed 2d 705, 710–711 (1967):

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

We are so convinced. See *People v Majette,* 39 Mich App 35 (1972); *People v Ronald Smith,* 27 Mich App 442 (1970). Michigan statutory law provides:

"A defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." MCLA 600.2159; MSA 27A.2159.

Again, considering the context of the statement, a lack of objection, and curative instruction, we find no error. *People v Paul F. Baker,* 7 Mich App 471 (1967); *People v Alexander,* 26 Mich App 321 (1970).

## IV

Miss Telly further testified, without objection, that she, Berryman, and Long John Reside went to breakfast together on the morning following her liaison with Pack at the Crest Motel. She related that at breakfast the following conversation took place.

"Well, we sat down and ordered breakfast. Long John was reading the newspaper. And I didn't say anything to Wayne because I was stunned, I didn't know what to

say to him and he was sitting there shaking, you know, with his elbows on the table and I says, what's the matter? And he says, I did something wrong, he says, but I can't tell you what it is. I says, well, why? He says, well, where will you be tonight? I says, where do you think I will be, down at Anderson's. He says, well, I'll come talk to you there."

Mr. Elmer Curtis Turbyfill testified as to conversations that he had with defendant Berryman both before and after the alleged conspiracy to drug and rob Pack.

"*Q. [Prosecutor]:* Did you have any conversations with Berryman in that three or four days before the fourth [of November], that would be around the first of November?

"*A. [Mr. Turbyfill]:* Yes.

\* \* \*

"*Q.* All right, what was that conversation about?

"*A.* You mean about the juice?

"*Q.* All right, tell us about that.

"*A.* It was just general talk, like, you know, he was talking about the queer that he had taken out the night before.

"*Q.* And what about that; what did he tell you about that?

"*A.* Just told that he had taken this guy to his office and juiced him and rolled him."

Following the testimony of witness Turbyfill, the court instructed the jury in part:

"Now, ladies and gentlemen, again, witness Turbyfill's testimony had bearing in two respects, as to prior acts and deeds and offenses of the *defendants* in this case and those have to do prior to the date which is critical in this matter and that is November 4, 1970.

"Mr. Turbyfill also testified as to other current and related matters on and about the time that this offense

took place and pertinent to the offense and the case before us. You must bear in mind the instruction I just gave you, applies only as to the testimony given by this witness of events and things *before* the critical date of this case." (Emphasis supplied.)

Further testimony was received from one Arthur Bryan that he had been drugged and robbed on November 14, 1970, by Berryman and another, not Van Meter. The trial court at the conclusion of both witnesses' testimony failed to limit the scope of the testimony to defendant Berryman.

We observe that the jury here had a heavy intellectual burden in sorting out, keeping in mind, and applying the impact of the testimony admitted for a limited purpose only. The admission that Berryman made at breakfast had no connection with the alleged conspiracy. It was made outside the presence of Van Meter.

Extrajudicial statements, admissions, and confessions of one co-conspirator-defendant made before or after the conspiracy and not in furtherance of it are not admissible against another. *People v Pitcher,* 15 Mich 397 (1867); *People v Saunders,* 25 Mich 119 (1872); *People v Beller,* 294 Mich 464 (1940); *People v Trilck,* 374 Mich 118 (1965).

Both defendants were represented by a single counsel. He did not object at trial. Nevertheless we feel that the trial court should have moved. *sua sponte* to limit the highly prejudicial impact of this testimony to Berryman alone. Where evidence against Van Meter was tenuous and entirely circumstantial, the admission of the extrajudicial statement of Berryman, unconnected with the conspiracy, and without limiting instruction was error. *People v Arnold,* 46 Mich 268 (1881); *People v Maunausau,* 60 Mich 15 (1886).

## V

The United States Supreme Court has wrestled with the confrontation right-hearsay problem in each term since it decided *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). The Court refused to recognize a general prohibition on hearsay testimony arising from the Sixth Amendment's confrontation clause. See *Bruton, supra,* footnote 3; also *California v Green,* 399 US 149; 90 S Ct 1930; 26 L Ed 2d 489 (1970); *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970). Because Berryman's statement was, "I did something wrong", we cannot say it definitely implicates Van Meter. We decline to extend the *Bruton* rule further.

For these reasons we reverse as to defendant Van Meter and grant a new trial.

Affirmed as to Berryman.

All concurred.