378

**Philip Wayne BERRYMAN,
Petitioner,**

v.

**Edward COLBERT, Warden, Ionia
Reformatory, Michigan,
Respondent.**

**Civ. A. No. 4–71274.**

United States District Court,
E. D. Michigan, S. D.

Dec. 26, 1974.

Arthur J. Tarnow, Detroit, Mich., for petitioner.

Frank J. Kelley, Atty. Gen., Patrick O. Landy, Asst. Atty. Gen., Lansing, Mich., for respondent.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

This is a petition for a writ of habeas corpus filed in behalf of Philip Wayne Berryman pursuant to 28 U.S.C. Section 2254. Berryman and his co-defendant John L. Van Meter were found guilty by a jury in the Circuit Court for Wayne County, Michigan, of conspiracy to commit unarmed robbery and first degree murder. Petitioner here challenges these convictions, claiming constitutional error on the part of the prosecution. He claims that comments made by the

prosecution during closing argument concerning the defendant's failure to testify were so prejudicial as to require reversal of this conviction. The respondent has filed a motion to dismiss pursuant to Rule 12(b), F.R.C.P., and a brief in opposition to the petition for writ of habeas corpus.

In order to resolve the questions presented, this Court has found it necessary to carefully examine the entire record of the trial proceedings. The trial transcript discloses a bizarre series of events which the prosecution attempted to link to the death of the murder victim.

At trial Miss Alexandria Telly testified that she was approached by petitioner at a Detroit bar on the evening of November 4, 1970. Petitioner offered Miss Telly $100 if she would help him drug a man and steal his money. After accepting the deal, Telly and petitioner proceeded to another bar, where they met Van Meter. Van Meter introduced Telly to the intended victim, Dennis Elmer Pack. There followed a series of moves to various bars, including the one owned by Mr. Pack. Further testimony disclosed that later that evening, Pack and Telly went to a motel at Pack's suggestion. The prosection attempted to draw the inference that at some point in the evening of the 4th of November petitioner drugged Mr. Pack in order to render him unconscious so that he could be robbed.

Miss Telly testified that at approximately 12:30 A.M. on November 5, 1970, she and Pack checked into the Crest Motel. They went to Room 21 and had intercourse. She testified that shortly thereafter Pack complained of dizziness. Miss Telly stated that at about the same time she passed out on the bed. The room clerk at the motel testified that Pack checked out between 2:30 and 3:00 A.M. the morning of November 5th. There was no evidence that anyone saw Pack alive after this date. His body was found in the back of his own automobile on November 14, 1970, in a Ford Motor Company parking lot. The autopsy disclosed that death resulted from two shotgun wounds. Further evidence revealed that at the time the body was found, Mr. Pack had been dead at least 48 hours, and possibly as long as ten days. There was no evidence that he had been drugged.

On the morning of November 5, 1970, Miss Telly awoke to find petitioner in the motel room with her. Petitioner told her that Pack was gone and that he did not get the money. They left the motel and met petitioner's friend, Long John Reside. The trio then went to have breakfast. Telly testified that at breakfast the following conversation took place:

> "Well, we sat down and ordered breakfast. Long John was reading the newspaper. And I didn't say anything to Wayne because I was stunned, I didn't know what to say to him and he was sitting there shaking, you know, with his elbows on the table and I says what's the matter, and he says, I did something wrong, he says but I can't tell you what it is. I says, well, why? He says, well, where are you going to be tonight? I says, where do you think I will be, down at Anderson's. He says, well I'll come talk to you there." (Tr. p. 165)

Miss Telly did not see petitioner again until she appeared in court.

During closing argument the prosecution made the following comment:

> "Now finally, to establish the robbery murder, the felony murder, we are relying almost entirely upon circumstantial evidence. *Nobody was there when the robbery took place. Nobody that we can bring here to testify. The defendants here, yes, but we can't get them to testify.* So it is a matter of relying upon physical facts that were described to you by the police officer, and from those physical facts, then you must make an inference, you must say, beyond a reasonable doubt certain things did happen." (Emphasis added.)

On appeal to the Michigan Court of Appeals, petitioner argued, as he does here, that the preceding statement constituted a comment on the accused's failure to testify which is forbidden by the Fifth Amendment. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Michigan Court of Appeals in People v. Berryman, 43 Mich.App. 366, 204 N.W.2d 238 (1972), addressed this issue and found against the petitioner, stating:

"   . . .   This presents a rather close issue and the prosecutor should be cautioned not to comment on the fact that the defendants cannot be compelled to testify. Fortunately, in this case the trial court gave excellent curative instructions. We find this harmless error within the rule of Chapman v. California, 386 U.S. 18, [24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711] (1967)". *Berryman, supra*, at 370–371, 204 N.W.2d at 240.

Subsequently, leave to appeal to the Michigan Supreme Court was denied. See 390 Mich. 801 (1973).

■ The challenged comments of the prosecutor were clearly improper argument. It is, of course, the duty of the prosecutor to advance the government's cause with force and persuasiveness; and in performing this duty, the prosecution should be allowed to zealously employ all of the legitimate skills of advocacy. United States v. Smith, 500 F.2d 293 (CA6 1974). However, in the present case the bounds of legitimacy were transgressed. The statement by the prosecutor was a direct reference to the petitioner's failure to testify. Whether the statement was intentional or not, the jury was led to conclude that if the petitioner could explain his participation in the victim's death, he should have taken the stand. This type of comment is forbidden by the Fifth Amendment. Griffin v. California, *supra*.

■ Having decided the the comment made by the prosecution was improper, the question remains whether the error was harmless. The standard to be ap-plied in determining harmless error was set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which requires reversal for con-stitutional error unless it is determined to be "harmless beyond a reasonable doubt." *Chapman* at 24, 87 S.Ct. at 828. While the application of this rule is nec-essarily speculative, this Court is not without guidance. The Supreme Court in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), discussed the application of the harmless error doctrine to cases where error has resulted from improper evidence being presented to the jury, stating:

"To weigh the error's effect against the entire setting of the record with-out relation to the verdict or judg-ment would be almost to work in a vacuum   . . .   In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the er-ror or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting . . .

"This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regard-ed generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a consti-tutional norm or a specific command

of Congress . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos* at 764–765, 66 S.Ct. at 1247.

Although *Kotteakos* involved error which was not considered to be of constitutional proportion, the rationale for the application of the harmless error rule is the same as if there were constitutional error.

The Supreme Court on numerous occasions has been faced with the question of harmless error in cases where comments were made by the prosecutor on the accused's failure to testify. Chapman v. California, *supra*, involved errors by the prosecution and the trial court in commenting on the inferences which could be drawn by the jury from the defendant's failure to take the stand. Justice Black writing for the majority, noted:

"And though the case in which this occurred presented a reasonably strong 'circumstantial web of evidence' against petitioners . . . it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions. Such a machine-gun repetition of a denial of constitutional rights, designed and calculated to make petitioners' version of

the evidence worthless, can no more be considered harmless than the introduction against a defendant of a coerced confession." *Chapman*, 386 U.S. at 25–26, 87 S.Ct. at 829.

Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968), involved an unconstitutional comment concerning the failure of the accused to testify. After noting that there was sufficient evidence to convict but that certain evidence could be viewed as casting doubt on the prosecution's case, the court stated:

"In this posture, we cannot say that the prosecutor's extensive argument asking the jury to overlook inferences favorable to petitioner because he invoked his constitutional right not to testify was, in the words of *Chapman*, 'harmless beyond a reasonable doubt.' " *Anderson* at 525, 88 S.Ct. at 1135.

In Fontaine v. California, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968), the Supreme Court again reversed a conviction, finding no harmless error in the prosecution's comments on the accused's failure to testify. The court held:

"These comments upon petitioner's failure to take the stand violated his constitutional privilege against self-incrimination . . . The jury had been asked to convict petitioner on the basis of circumstantial evidence . . . In these circumstances, the State has not met its burden of proving beyond a reasonable doubt that the erroneous comments and instruction did not contribute to petitioner's conviction." *Fontaine* at 596, 88 S.Ct. at 1231.

■ In the case at hand, as in *Fontaine*, the state's evidence concerning petitioner's involvement in the murder was far from overwhelming. The accumulation of evidence against the petitioner was completely circumstantial. A careful review of the transcript indicates that although there was much evidence showing petitioner's guilt of a conspiracy to commit robbery, there was no direct

testimony concerning his involvement in the victim's death. The murder weapon was never produced, and it was not shown that petitioner had ever been involved with guns. There was no evidence that the victim was ever drugged. Although there was testimony that petitioner had been involved in other drugging and robbing incidents, there is no indication that he ever resorted to violence. In addition, the jury deliberated for almost two days and was brought back for additional instructions on two occasions. On one occasion the court gave the jury an *Allen* charge in order to speed up the deliberation. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L. Ed. 528 (1896).

There being such a weak case of murder against the petitioner, a comment on the accused's failure to testify, however slight, might well have removed from the jurors' minds any reasonable doubt of petitioner's guilt.

In addition to the previously mentioned comment by the prosecution, at least one other statement buttresses the implication that the jury should draw an inference of guilt from petitioner's failure to testify. At the close of rebuttal argument, the prosecution stated:

> "You must find that the evidence in this case, that is the circumstantial evidence beyond a reasonable doubt, supports the theory of guilt in this felony murder. You must also find that with the facts that we have described to you there is no other reasonable explanation as to what took place. *Ladies and Gentlemen, no other reasonable explanation has even been suggested here and if you use your imaginations, I defy you to come up with one.*" (Emphasis added.)

This statement when considered in the light of a direct reference to the accused's failure to testify, raises the clear implication that if there was an explanation, the petitioner should have testified. These comments when taken together are not unlike those held to be error in United States v. Smith, 500 F.2d 293 (CA6 1974).* This Court is satisfied that the prosecution's comments were prejudicial and deprived the petitioner of a fair trial. Furthermore, this type of error may be so prejudicial that no cautionary instruction can safely eradicate its effect. This Court has grave doubts that the improper argument did not have substantial influence on the jury's verdict and must, under the test of *Kotteakos*, supra, conclude that the error was not harmless. Accordingly, petitioner must be granted a new trial on the charge of first degree murder or a writ of habeas corpus will issue.

■ This Court is satisfied that the prosecutor's comments had no effect on petitioner's conviction for conspiracy to commit robbery. The evidence against petitioner on this charge was overwhelming and was supplied by direct testimony. Furthermore, the comments were clearly aimed at the murder charge, and the jury could not be said to have been influenced in regard to the charge of this conspiracy. Accordingly, it is the opinion of this Court that the prosecutor's comments as they related to the conspiracy charge were harmless beyond a reasonable doubt.

In view of the foregoing, it is ordered that petitioner's conviction for first degree murder be set aside and that petitioner be afforded a new trial on said charge within ninety (90) days of this date, or a writ of habeas corpus shall issue as prayed for.

It is the further order of this Court that the petition for a writ of habeas corpus as it relates to a conviction for conspiracy to commit robbery be and hereby is denied.

---

* This Court is mindful that the decision in *Smith* was based on the Court of Appeal's supervisory power, but nevertheless it is of the opinion that the challenged comments constituted constitutional error.