PEOPLE v. SOBCZAK.

1. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE—INFERENCES.
   Conspiracy may be proved by circumstantial evidence, but the circumstances must be such as to warrant a fair inference of the facts to be established.

2. CRIMINAL LAW—EVIDENCE—ASSOCIATION.
   Criminal guilt is a personal fault and comes not from association, without more, be it with family or friends.

3. CONSPIRACY—EVIDENCE—ASSOCIATION—KNOWLEDGE—OVERT ACTS.
   Proofs adduced in prosecution for conspiracy to violate the gaming statutes, which clearly showed that defendant had associated with evil men, but which failed to disclose his knowing participation in a conspiracy or the commission of an overt act on his part, held, insufficient to substantiate a verdict of guilty (CL 1948, §§ 750.301–750.306, 750.372).

Appeal from the Recorder's Court for the City of Detroit; Skillman (W. McKay), J. Submitted October 13, 1955. (Docket No. 87, Calendar No. 46,325.) Decided December 28, 1955.

Henry Sobczak was convicted of conspiracy to violate the statutes against gambling. Reversed and defendant discharged.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am Jur, Conspiracy § 38.
[3] 11 Am Jur, Conspiracy §§ 6, 37.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, *Samuel Brezner* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for plaintiff.

*George A. Kelly,* for defendant.

SMITH, J. This is a conspiracy case. The defendant, it was charged, was one of a large number who conspired to violate the gaming statutes of this State. (CL 1948, §§ 750.301–750.306, inclusive, and § 750.372 [Stat Ann 1954 Rev §§ 28.533–28.538, inclusive, and § 28.604].) The organization was engaged in the "numbers business." It consisted of those who recorded the bets (the "writers"), those who collected them on assigned routes ("pickup" men), and substation operators, to whom the pickup men turned over their collections, in "packages," as well as other functionaries. The details of the operation are not necessary to a decision on the questions raised. After these defendants had been "observed by police officers for a period of over a year, from November 28, 1949, to December 8, 1950, * * * practically daily, * * * with the exception of Sunday," search warrants were obtained, certain premises raided, gambling paraphernalia seized, and arrests made.

It was the theory of the State that defendant Sobczak was one of the co-owners of the business. He was arrested at his home, which was thereupon searched, but no gambling paraphernalia found. After trial by jury he was found guilty on 4 counts of the indictment and sentenced. He brings his case to this Court upon several claims of error, one being that the verdict of the jury was against "the great weight of the evidence, there being in fact and law, no evidence to sustain the verdict."

We have examined the voluminous record in detail and find that defendant's participation in this conspiracy can be summarized by stating that he was observed by police officers associating with one Albert Kuzera (another convicted defendant) and other named defendants, certainly on 7, and possibly on 3 additional occasions in the above year of observation. We find little else. The testimony adduced consisted of observations made of defendant's movements and activities on described dates. Since it is all essentially similar, it will be described in detail only as to illustrative days. Thus we consider the events of May 16, 1950. On this date Albert Kuzera drove to the defendant's home and went inside. He remained 40 minutes. When he and defendant emerged, the latter had some papers in his hand. They were not concealed. Were they gambling paraphernalia of some kind? Were they bowling contracts? (Defendant's place of business was a rather large establishment, with bowling alleys, known as Falcon Bar and Recreation.) We are not informed. They drove to defendant's place of business, where defendant got out of the car and went inside, but without carrying the papers. He emerged shortly afterwards, at 12:19 p.m., and drove with Kuzera to 20150 Packard, the home of John Tomczak. (This house, when later searched, on November 16th, disclosed coin wrappers, an adding machine, tapes therefor, a "Stroh beer case containing $98.50 in pennies and $5.85 in silver," and other articles.) At this address they parked, and walked to the rear of the house, out of sight of the watching officer. Their car was driven away after about three-quarters of an hour. Similar incidents on other days followed. Kuzera and defendant were occasionally together. Sometimes, either before meeting defendant, or afterwards, or even while together (as above related), Kuzera would visit

homes at which the later searches revealed gambling paraphernalia. On one occasion (July 12, 1950) Kuzera took from such a home at 9439 Brombach, in Hamtramck, a package, about 8x8 inches in size, which he took to his car. Later in the day he picked up defendant, and drove him home. When defendant left the car he carried a package about the same size as the one Kuzera took from the Brombach address. It may have been the same package. What it contained we are not told. It may have been the fruits or instruments of crime. On the other hand, it may have been an abstract for a lot on Packard avenue, purchased by Edward Skorupski from Albert Kuzera, and concerning which defendant had tried to effect a sale for Kuzera. This is the only "package" incident now presented for our consideration. In addition there was testimony to the effect that on May 25, 1950, defendant entered the home of another codefendant Stanley Brynski, at 3401 Burns avenue, whereupon the latter closed the shades of the Venetian blinds in the sunroom of his home.

Defendant also was observed talking, at the bar of Falcon Recreation, with Albert Kuzera, Tomczak, and Joseph Bosck, all codefendants, and all later convicted.

We will not summarize the rest of the testimony. It is all of a piece. What does the State claim as to it? That it presented enough evidence of conspiracy to go to the jury, and that the jury has resolved the question of fact presented. As the brief puts it:

"Here there was a question of fact as to whether or not Sobczak was taking part in the numbers conspiracy by his frequent meetings in varied situations with heads of the syndicate, and his delivery and receipt of packages similar to those commonly carried by numbers operators."

And:

"Observations by the police indicated that Sobczak, undisturbed, met with proved heads of the syndicate in both public and private places on many occasions, at times and places, and under circumstances which excluded purely social or legitimate business contacts. Immediately prior or subsequent to meeting Sobczak, the various conspirators visited confederates and called at addresses proved to be quarters of the syndicate. Sobczak's conduct must be viewed in this environment."

What all of this testimony comes down to is that the defendant was keeping bad company. There is, at least, a breath of suspicion that he was involved somehow in this nefarious business. But it is no more than a suspicion. There may have been valid reasons for the associations described. The names of the defendants have a national similarity. There is evidence of one apparently legitimate business transaction (concerning the Packard street lot) which was the subject of some dealings between defendant and Kuzera.

It has long been established, of course, that conspiracy may be proved by circumstantial evidence, in fact that such is generally the case. *People* v. *Beller,* 294 Mich 464; *People* v. *Pitcher,* 15 Mich 397. But the circumstances must be such as to warrant a fair inference of the facts to be established. The meetings of defendant with Kuzera are as consistent with innocence as with guilt and it is never to be forgotten that a presumption of innocence cloaks our citizens from birth to death. What we fail to find in this record is any proof that any of the other parties to this conspiracy ever so much as spoke of it to defendant, or he of it to them, or to anyone else, or even that he knew of it. We find none of the other codefendants at the trial implicating this defendant in any way, a circumstance of some signif-

icance in view of the fact that the State called as witnesses numerous witnesses who had participated in varying degrees in the operation, but who had not been named in the information as defendants. None of these witnesses implicated this defendant, although their testimony tended to involve several defendants other than appellant Sobczak. Nor do we find overt acts on his part. What we have is association at certain times over a period of a year with evil men. That is not enough. Criminal guilt under our law is personal fault. It is highly individualistic. It comes not from association, without more, be it with family or friends. We have long left the Code of Hammurabi, which made the guilt of the individual the guilt of his family as well, so that if a man struck the pregnant daughter of a free man, and she died, "his daughter shall be slain." (The Hammurabi Code and the Sinaitic Legislation, Edwards, p 63; Code Hammurabi, § 210; Diamond, Primitive Law, p 284; 17 University of Chicago Law Review 148.)

From an examination of the record as a whole it appears to us that the proofs adduced were insufficient to sustain a verdict of conviction and the jury should have been so instructed.

The judgment of conviction must be reversed and the defendant is discharged.

SHARPE, BOYLES, REID, and KELLY, JJ., concurred with SMITH, J.

CARR, C. J., and BUTZEL and DETHMERS, JJ., concurred in the result.