PEOPLE *v.* BLAKES.

1. Conspiracy—Gaming—Evidence—Corpus Delicti—Arrest.
   Statements made to police officers by a codefendant shortly after his arrest for conspiracy to violate State gaming laws cannot be used at trial to establish the *corpus delicti* of the alleged conspiracy (CLS 1961, § 750.505).

2. Same—Circumstantial Evidence—Inferences.
   Conspiracy may be proved by circumstantial evidence, but circumstances must be such as to warrant a fair inference of the facts to be established.

Appeal from Court of Appeals, Division 3, Holbrook, P. J., and McGregor and R. B. Burns, JJ., affirming in part and reversing in part Superior Court of Grand Rapids, Vander Ploeg (Claude), J. Submitted April 10, 1969. (Calendar No. 9, Docket No. 51,647.)   Decided October 6, 1969.

4 Mich App 13, reversed.

Walter Blakes, Emmett Pruitt, and Willis Brown were convicted of conspiring to violate the gambling laws of the State. Defendants appealed to the Court of Appeals. Affirmed as to defendants Blakes and Pruitt. Reversed without a new trial as to defendant Brown. Defendants Blakes and Pruitt appeal. Reversed.

---

References for Points in Headnotes
[1] 16 Am Jur 2d, Conspiracy § 38.
[2] 16 Am Jur 2d, Conspiracy § 36.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *S. J. Venema,* Chief Appellate Attorney, and *Donld E. Zerial,* Assistant Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendants on appeal.

KELLY, J. A three-month Grand Rapids police department investigation and surveillance of persons suspected of operating a numbers lottery resulted in complaint and warrant accusing Walter Blakes, Emmett .Pruitt, LaVerne Holbrook, and Willis Brown with conspiring together to violate the gaming laws. At the preliminary examination, LaVerne Holbrook was discharged from custody upon motion by the prosecuting attorney.

Pruitt, Blakes, and Brown waived a jury trial and were found guilty by then Superior Court Judge Vander Ploeg of conspiring together to violate the gaming and gambling law (CLS 1961, § 750.505 [Stat Ann 1954 Rev § 28.773]).

The Court of Appeals (*People* v. *Blakes* [1966], 4 Mich App 13) affirmed the Pruitt and Blakes convictions but reversed the judgment of conviction as to Willis Brown, stating (p 18):

"There is no testimony in the printed record or in the notebooks submitted in evidence that he had any knowledge of said conspiracy."

In this appeal, appellants Pruitt and Blakes present the following question:

"Were the proofs received in the conspiracy trial of the appellants below sufficient to sustain a verdict of guilt?"

At the request of the Grand Rapids police department, Cass county Deputy Sheriff Andrew Chavaus

came to Grand Rapids to assist in acquiring evidence against the defendants. He testified that he placed number policy bets with Emmett Pruitt on December 18, 19, 20, and 21, 1963.

On the same day that Chavaus placed his last bet, namely, December 21, 1963, all three defendants were arrested, but no gambling paraphernalia was found at the time of their arrests.

Immediately after arrest, defendant Blakes was brought by the police to the LaVerne Holbrook apartment, located on Grandville street, and while the officers were searching this apartment, defendant Blakes said, "The stuff that you fellows are looking for is over there in that room right down there off the hall." In this room pointed out by Blakes, a number of numbers tickets and adding machine tapes were found and, also, the betting slips which Deputy Sheriff Chavaus had purchased from defendant Pruitt.

Applying our decisions in *People* v. *Heidt* (1945), 312 Mich 629, and *People* v. *Asta* (1953), 337 Mich 590, we must conclude that Blakes' statement at the Holbrook apartment shortly after his arrest cannot be used to establish the *corpus delicti* of this alleged conspiracy.

We quote from defendants' brief:

"Appellants show that there was no evidence in the record before the Court of Appeals to suggest that the defendant Pruitt was ever seen in the company of the defendant Blakes. While the Court of Appeals stated in its opinion that:

" 'The defendants were observed communicating with one another and exchanging materials with one another in daily routine,' [sic]

there is absolutely nothing in the transcript of proceedings to support this statement. Officer Patterson said that from September 27, 1963 he saw the

defendant Pruitt almost every day, but that he did
not see the defendant Brown, or Blakes until 'the
latter part of November.'

"Further, in all the transcript Blakes was seen at
431 Grandville on a number of occasions, *but with
the defendant Brown.* Only once in all the evidence
was Blakes ever seen transferring, receiving, or ex-
changing anything, and that was on December 20,
1963, the day before his arrest, when he was seen to
receive an envelope from *Brown,* not Pruitt. It is
true that Brown was receiving something from
Pruitt, but whatever this was, it could not be thought
to have been contraband, as the Court of Appeals
held that Brown did nothing under the record to jus-
tify his being convicted or considered a part of any
alleged conspiracy, and he was *acquitted* by the
Court of Appeals.

"In reading the entire transcript there simply is
not sufficient evidence contained therein to associate
Pruitt and Blakes in a common enterprise. * * *

"Even though gambling materials, in some small
quantity, were found located at the Grandville ad-
dress, after the arrest of the defendant Blakes, the
testimony contained in the transcript shows that this
house was the property of one Felix [LaVerne?]
Holbrook, who appeared in count 1 of the informa-
tion as a co-conspirator, but who was discharged
from custody upon the examination of the cause.
* * *

"The only other testimony in the record went to
the appellant Pruitt, and showed that on December
18, 19, 20 and 21st, of 1963, Andrew Chavaus paid
Pruitt for a number, but Pruitt was not seen in con-
tact with Blakes on any of these dates. No evidence
shows Blakes to have been involved in any way in
this set of circumstances. *Cf. United States* v. *Saun-
ders* (CA 6, 1964), 325 F2d 840, as being importantly
similar.

"A criminal connection between Pruitt and Blakes
cannot be based upon mere surmise, but must clearly
appear from the proofs. As was said in *Ingram* v.

*United States* (1959), 360 US 672 (79 S Ct 1314, 3 L Ed 2d 1503) at page 680:

" 'To establish the intent the evidence of knowledge must be clear not equivocal.  *  *  *  This because charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning *  *  *  a dragnet to trap all substantive crimes.'

"Finally, it must be remembered that the charge made below was one of conspiracy, and *no one,* including Pruitt, *could be in conspiracy by himself.*

"It matters not that Pruitt accepted numbers bets from officer Chavaus.  That might constitute a specific substantive offense; but it certainly does not permit the finding of conspiracy."

Appellants cite *People* v. *Sobczak* (1955), 344 Mich 465 to stress the fact that 'no inference of guilty participation can be drawn from mere association among persons, even those of shady reputation."

Claiming the testimony supports an inference of a conspiracy in this case, plaintiff states:

"Appellee contends that the constant association of the appellants and their regular coming and going from the premises at 431 Grandville, S.W., where the gambling equipment and original slips were found, will support an inference of a conspiracy in this case.  None of the defendants lived at this address, and the officers were directed by Blakes to gambling equipment and the duplicate slips found on the premises.

"The instant case is distinguishable from *People* v. *Sobczak.*"

In the *Sobczak Case,* as in this appeal, the defendant was accused of "taking part in the numbers conspiracy" and the State, claiming there was sufficient testimony to sustain the conviction, stated (pp 468, 469):

" 'Here there was a question of fact as to whether or not Sobczak was taking part in the numbers conspiracy by his frequent meetings in varied situations with heads of the syndicate, and his delivery and receipt of packages similar to those commonly carried by numbers operators.'

"And:

" 'Observations by the police indicated that Sobczak, undisturbed, met with proved heads of the syndicate in both public and private places on many occasions, at times and places, and under circumstances which excluded purely social or legitimate business contacts. Immediately prior or subsequent to meeting Sobczak, the various conspirators visited confederates and called at addresses proved to be quarters of the syndicate. Sobczak's conduct must be viewed in this environment.' "

In reversing the judgment of conviction and discharging defendant, we commented upon the above State's claim of sufficiency as follows (p 469):

"What all of this testimony comes down to is that the defendant was keeping bad company. There is, at least, a breath of suspicion that he was involved somehow in this nefarious business. But it is no more than a suspicion. * * *

"It has long been established, of course, that conspiracy may be proved by circumstantial evidence, in fact that such is generally the case. *People* v. *Beller* (1940), 294 Mich 464; *People* v. *Pitcher* (1867), 15 Mich 397. But the circumstances must be such as to warrant a fair inference of the facts to be established. * * * What we fail to find in this record is any proof that any of the other parties to this conspiracy ever so much as spoke of it to defendant, or he of it to them, or to anyone else, or even that he knew of it."

We cannot agree with plaintiff that the instant case is distinguishable from *People* v. *Sobczak,* and conclude that the proof of conspiracy offered in the

*Sobczak Case* was more adequate and convincing than that offered in the instant case.

Because of our finding that proofs offered in the instant case were not sufficient to sustain a verdict of guilt, it is not necessary for us to pass judgment upon defendants' claim that the court committed reversible error in admitting into evidence five memoranda of the police officers' daily observations, or the court's failure to enter in the trial transcript the text of the memoranda of said observations.

Judgment of conviction reversed. Defendants discharged.

T. E. BRENNAN, C. J., and DETHMERS, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.