## PEOPLE v SMITH

### OPINION OF THE COURT

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—PROBABLE CAUSE.
   The standard of proof for binding an accused over for trial is not as high as for conviction and requires only a showing of probable cause, which is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.

2. CRIMINAL LAW—PRELIMINARY EXAMINATION—MAGISTRATES— ABUSE OF DISCRETION—APPEAL AND ERROR.
   The Court of Appeals reviews the rulings of an examining magistrate only for abuse of discretion; where the facts are such that it strains the imagination to believe that the person accused of carrying a weapon in a motor vehicle did not know of the weapon's presence in the vehicle, such strained imagination leaves little doubt that the magistrate did not abuse his discretion in binding the accused over for trial.

3. CRIMINAL LAW—STATUTES—WEAPONS—DANGEROUS WEAPONS.
   An M-1 rifle is a dangerous weapon within the meaning of the concealed weapons statute (MCLA 750.227).

### DISSENT BY LEVIN, J.

4. CRIMINAL LAW—PRELIMINARY EXAMINATION—BURDEN OF PROOF.
   *The people, at a preliminary examination, must establish (1) that the offense charged was committed, and (2) that there is probable cause to believe the accused committed it; all of the essential elements of the offense must be established.*

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 9] 21 Am Jur 2d, Criminal Law §§ 443, 449, 450.
[2] 21 Am Jur 2d, Criminal Law § 446.
[3] 56 Am Jur, Weapons and Firearms § 10.
[5–8] 29 Am Jur 2d, Evidence §§ 288, 623.
  56 Am Jur, Weapons and Firearms §§ 10, 12.

.

5. CRIMINAL LAW—CARRYING A DANGEROUS WEAPON—ELEMENTS—
   KNOWLEDGE—PRESUMPTIONS.

*Knowledge is an essential element of the offense of carrying a
dangerous weapon in a vehicle; knowledge must be shown by
the people in a prosecution for carrying a dangerous weapon in
a vehicle since there is no statutory presumption of knowledge
arising from the presence of the weapon (MCLA 750.227).*

6. CRIMINAL LAW—CODEFENDANTS—ASSOCIATION—GUILT—EVIDENCE
   —PARTICIPATION.

*Guilt is personal even where more than one defendant is charged
with a statutory crime; there must be evidence of participation
in the act of carrying in order to convict a defendant of
carrying a dangerous weapon in a vehicle and the inference of
guilty participation may not be drawn from mere association
among persons, even with knowledge of the presence of a
weapon.*

7. CRIMINAL LAW—EVIDENCE—INFERENCES—KNOWLEDGE—PARTICIPA-
   TION.

*Evidence that a passenger in a vehicle was carrying ammunition
permits the inference that he had knowledge of the presence of
a weapon and participated in carrying it.*

8. CRIMINAL LAW—CARRYING A DANGEROUS WEAPON—EVIDENCE—
   KNOWLEDGE—PARTICIPATION.

*Guilty participation in carrying a dangerous weapon can be
shown by the accused person's close proximity to the weapon
where the inference of the accused's knowledge is strong, by
admissions of the accused or testimony of a witness that the
accused participated, or by the demonstration of facts sufficient
to warrant the trier of fact in reasonably concluding that the
accused and other persons were engaged in a common unlawful
enterprise and that the weapon was being carried for the
purpose of furthering the unlawful enterprise.*

9. CRIMINAL LAW—CARRYING A DANGEROUS WEAPON—PRELIMINARY
   EXAMINATION—EVIDENCE—SUFFICIENCY.

*Evidence that an accused was found in the third seat in a van
stopped by police at 11:20 p.m., that there was ammunition in
the front seat between the driver and a passenger, and that an
M-1 rifle was found under the second seat occupied by another
passenger is insufficient to bind the accused over for trial for
carrying a dangerous weapon in a vehicle where there were no
statements or movements by the accused or other passengers
incriminating the accused and no evidence which would sup-
port a finding that the accused and the other passengers were*

*engaged in a common unlawful enterprise involving the carrying of a dangerous weapon; that evidence, without more, does not establish the accused's participation in carrying the weapon, an element of the offense charged, even if the accused's knowledge of the presence of the weapon in the van is assumed.*

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J. Submitted Division 1 October 10, 1972, at Detroit. (Docket No. 13636.) Decided September 26, 1973. Leave to appeal applied for.

Robert E. Smith was charged with carrying a dangerous weapon in a motor vehicle and was bound over for trial after a preliminary examination. Defendant appeals by leave granted. Affirmed and remanded for trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Laurence C. Burgess,* for defendant.

Before: V. J. BRENNAN, P. J., and LEVIN and O'HARA,* JJ.

V. J. BRENNAN, P. J. Judge LEVIN in his dissent, we believe, has set up a standard which encompasses all gun-in-car cases and because of that reasoning it seems every situation where guns are found under the seat or on the floor and nobody claims them (and why should they) will require dismissal. And this standard we cannot agree to.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The defendant, Robert Early Smith, and three other persons were charged with committing the offense of carrying a concealed weapon in a motor vehicle. MCLA 750. 227; MSA 28.424. After the preliminary examination, the defendants including Smith were bound over for trial. Motions to quash the information were denied. Smith was granted leave to take an interlocutory appeal.

Detroit police officer Ward, the principal witness at the examination, testified that he and his partner observed a Ford Econoline van, in which Smith was a passenger, make several erratic U-turns in front of traffic. The four defendants were placed under arrest after officer Ward saw through the right window what he believed to be the stock of a rifle, opened the door, and grabbed an M-1 rifle from underneath the second seat. The defendants had not moved when the officers approached.

The van had three seats. Codefendant Gaut was driving. Codefendant Turner was seated next to him in the right front passenger seat. Codefendant Williams was occupying the second seat alone. The gun was on the floor in front of the second seat between the seat and Williams' legs. Defendant Smith was stretched out on the third seat with his feet up on the seat.

A cartridge belt and clips containing ammunition were found in the front seat between codefendants Gaut and Turner.

The first question is whether, under the concealed weapons statute, *supra,* this defendant's presence in this vehicle under these circumstances constitutes sufficient evidence to bind him over for trial. The relevant statute provides:

"Sec. 5. If it shall appear that an *offense* not cognizable by a justice of the peace *has been committed,* and that there *is probable cause to believe the prisoner*

*guilty thereof,* and if the offense be bailable by the magistrate, and the prisoner offer sufficient bail, it shall be taken and the prisoner discharged; but if no sufficient bail be offered, or the offense be not bailable by the magistrate, the prisoner shall be committed to jail for trial." (Emphasis supplied.) MCLA 766.5; MSA 28.923.

At this stage, the people must first *establish* each element, not *prove* each beyond a reasonable doubt. In order for the examining magistrate to reach that conclusion, he must necessarily have proof before him of all of the elements of the offense. That is plain on the face of the statute. A holding to that effect should be based on the statute, not on the cases cited in Judge LEVIN's dissent. *People v Randall,* 42 Mich App 187; 201 NW2d 292 (1972), does make such a holding, but the cases it is based on *(People v Kelsch,* 16 Mich App 244; 167 NW2d 777 [1969], and *People v Barron,* 381 Mich 421; 163 NW2d 219 [1968]) both deal with a defendant's challenge to the sufficiency of the evidence to *convict,* not to bind over. *People v Bellanca,* 386 Mich 708; 194 NW2d 863 (1972), just reiterates the statutory standard.

Assuming for the moment that the rifle falls within the meaning of the statute, it is clear that *someone* was carrying it in violation of the statute. There is abundant authority that we review the examining magistrate only for abuse of discretion, *People v Paille #2,* 383 Mich 621; 178 NW2d 465 (1970). We find no such abuse here. The standard of proof for binding over isn't as high as conviction, *People v O'Leary,* 6 Mich App 115; 148 NW2d 516 (1967). In *Paille #2, supra,* at 626; 178 NW2d at 467, the Court defined probable cause as follows:

"In *People v Dellabonda,* 265 Mich 486 [251 NW 594, 595] (1933), the Court at p 490, stated:

" 'To authorize the examining magistrate to bind appellant over for trial there must have been good reason to believe appellant guilty of the crime charged. Some cases hold a *prima facie* case against the accused must be made out. *This Court has not defined what constitutes probable cause, leaving each case to be determined upon its facts.* Bouvier defines probable cause as, *"A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged."* 3 Bouvier's Law Dictionary (Rawle's 3d Rev), p 2728.' " (Emphasis added.)

Thus, on this point we disagree with Judge LEVIN on the facts. An M-1 is not an inconspicuous article; it's 43 inches long, and, since it's an infantry weapon, quite heavy, so that it could also be used as a club. It was found partially under the second seat, and defendant was lying on the third seat. While, if he were especially non-observant, he could have missed it, it strains the imagination. That strained imagination should leave little doubt that the magistrate did not abuse his discretion. We should, however, be careful to say that this isn't enough to convict—a strained imagination still leaves room for reasonable doubt.

Is a 43-inch M-1 a "dangerous weapon" within the meaning of MCLA 750.227, MSA 28.424, which provides as follows:

"Sec. 227. Carrying concealed weapons—Any person who shall carry a dagger, dirk, stiletto or *other dangerous weapon* except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him; and any person who shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his

dwelling house or place of business or on other land possessed by him, without a license to so carry said pistol as provided by law, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by fine of not more than 2,500 dollars." (Emphasis added.)

We can, if we choose, dive into the statute and examine it piece by piece making cross references to not only statutes but to statute-interpreting cases. However, we choose not to do so because we have no doubt that the Legislature, when they said "dangerous weapon", in fact meant dangerous weapon; and we have no difficulty at all placing M-1 rifles in the dangerous weapon category.

We affirm and remand to the trial court for trial.

O'HARA, J., concurred.

LEVIN, J. *(dissenting).* The question is whether, under the concealed weapons statute, mere presence in a vehicle containing a concealed weapon is sufficient to warrant probable belief that the person present has violated the statute.

The people rely on the rule that an appellate court will not set aside findings of an examining magistrate unless there was a "clear abuse" of discretion. *People v Dellabonda,* 265 Mich 486, 491; 251 NW 594, 595 (1933); *People v Medley,* 339 Mich 486, 491; 64 NW2d 708, 711 (1954). (See fn 2.)

At the preliminary examination the people must establish (1) that the offense charged was committed, and (2) that there is probable cause to believe the defendant committed it. *People v Asta,* 337 Mich 590, 609; 60 NW2d 472, 482 (1953); *People v Ray,* 2 Mich App 623, 627; 141 NW2d 320, 322 (1966). All the essential elements of the offense must be established. *People v Randall,* 42 Mich

App 187, 190; 201 NW2d 292, 294 (1972). *Cf. People v Bellanca,* 386 Mich 708, 712; 194 NW2d 863, 864 (1972).

Knowledge is an element of the offense of carrying a concealed weapon. *People v Petro,* 342 Mich 299, 306; 70 NW2d 69, 70 (1955); *People v Jerome I Smith,* 21 Mich App 717; 176 NW2d 430 (1970). I am willing to assume with my colleagues that the evidence permits the inference that Smith had knowledge of the presence of the rifle.[1] I do not agree that it follows that there was sufficient evidence of Smith's probable involvement in the "carrying" of the weapon—an essential element of the crime.[2]

In *People v Jerome I Smith, supra,* p 722; 176 NW2d at 433, another panel of this Court defined the concept of "carrying" a concealed weapon in an automobile:

"The concealed weapons statute does not punish presence in a car where a pistol is found. The statute's

---

[1] *See People v Cunningham,* 20 Mich App 699; 174 NW2d 599 (1969). There is no statutory presumption of knowledge under MCLA 750.227; MSA 28.424. *See People v Petro,* 342 Mich 299, 306; 70 NW2d 69, 70 (1955).

The likelihood that Smith knew of the presence of the M-1 was not explored by the prosecutor, the court, or Smith's lawyer save indirectly.

There was the evidence that Smith continued to sit on the third seat with his feet up, and did not move when the police approached and grabbed the rifle from beneath the second seat. The van was stopped at 11:20 p.m. There was no indication of how long before the defendants had entered the van. No evidence was offered concerning the likelihood of Smith's entering the four-door Ford Econoline "window van" without seeing the rifle, which was observed on the floor in front of the second seat by the police officer looking in the window.

[2] The magistrate may have been under an erroneous impression concerning the law and, hence, the evidence required, the inference he was obliged to draw, in order to bind Smith over on the charge that he was carrying a concealed weapon. During colloquy with one of the lawyers the magistrate said: "The crime that's charged here is that of being *in* a motor vehicle in which a dangerous weapon is transported". (Emphasis supplied.)

thrust is 'carrying concealed weapons without a license'. In other words, the point of the statute is to punish 'carrying'. Thus, to convict one who is merely present in a car necessarily rests upon two inferences: (a) an inference that he knows a pistol is present; and (b) an inference that he is carrying the pistol. Therefore, even by showing that someone knew a pistol was present should not lead *automatically* to a conclusion that he was 'carrying' the pistol." (Emphasis by the Court.)

If the mere presence of the accused person in an automobile, along with evidence that he had discovered that others in the automobile were carrying a concealed weapon, were sufficient to infer his participation in the commission of that offense, then an unwitting person, unaware of the criminal purpose of another passenger to carry a concealed weapon, who, while riding in the automobile, espies a weapon, would be guilty of a felony unless he protests and asks that the automobile be stopped so that he may pursue his journey afoot.

Michigan cases involving more than one defendant charged with a statutory crime have recognized that guilt is personal.[3] The inference of guilty participation may not be drawn from mere association among persons.[4]

---

[3] In *People v Germaine,* 234 Mich 623, 627; 208 NW 705, 706 (1926), a case from the liquor prohibition era, the Michigan Supreme Court stated that the crime of felonious possession of intoxicating liquor contemplated more than mere knowledge by a passenger in an automobile that the driver has liquor in the automobile; it requires evidence of some degree of physical dominion or right to control. *See People v Davenport,* 39 Mich App 252, 256; 197 NW2d 521, 523 (1972), where we said, "Davenport cannot be convicted on the theorem that *someone* must have been in possession of the heroin". (Emphasis by the Court.) *Cf. People v Burrel,* 253 Mich 321; 235 NW 170 (1923).

[4] *People v Blakes,* 382 Mich 570, 574–575; 170 NW2d 832, 834–835 (1969), and *People v Sobczak,* 344 Mich 465, 469–470; 73 NW2d 921, 923 (1955) (cases involving alleged conspiracies to violate the gaming laws). *See, also, People v Davenport,* 39 Mich App 252, 257; 197 NW2d 521, 523 (1972).

The language of *People v Jerome I Smith, supra,*
p 723; 176 NW2d at 434, is again pertinent:

"In its ordinary meaning, there must be evidence of
participation in the act of carrying in order to convict
under the statute."

The majority assert that the view expressed in
this dissenting opinion would seem to require dis-
missal in "every situation where guns are found
under the seat or on the floor and nobody claims
them (and why should they)". However, of the four
men in the car, only one, the appellant Smith,
claims that the prosecution against him should be
dismissed for lack of sufficient evidence to bind
him over for trial.

My colleagues and I are in agreement that a
magistrate enjoys no discretion to bind a person
over unless *all* the elements of the offense are
established. Our disagreement concerns only the
legal question of whether a trier of fact should be
permitted to infer from the evidence in this case
that Smith was "carrying" the weapon, and not
the application of the standard which guides the
magistrate in exercising his "discretion".

The majority apparently agree that the evidence
is insufficient to convict Smith, but hold that it is
adequate to support the binding-over decision. The
standard of jury persuasion is indeed higher than
the standard which guides the magistrate. But we
are not concerned with the *weight* to be given an
inference in assaying guilt or innocence, but
rather with a question of law: Should the trier of
fact be permitted to infer from the evidence that
Smith was carrying a concealed weapon? If the
answer to that question is, as I believe, that the
trier of fact should not be permitted to draw that

inference, then the people have failed to establish an element of the offense.

Evidence that a passenger in a vehicle is carrying ammunition permits the inference that he has knowledge of the presence of the weapon and participated in carrying it.[5] (A cartridge belt and clips containing ammunition were found in the front seat between co-defendants Gaut and Turner.) Where the inference of knowledge is strong, the accused person's close proximity to a weapon may be sufficient circumstantial evidence to establish his participation.[6] (Co-defendant Williams was occupying the second seat alone. The gun was on the floor in front of the second seat between the seat and Williams' legs, the "heels of his shoes".)

Admissions of the accused person or testimony of a witness that the accused person participated in carrying the weapon will suffice.[7] An accused person's participation in the crime of carrying a concealed weapon may also be established if the trier of fact can reasonably conclude that the accused person and other persons were engaged in a common unlawful enterprise and the gun was being carried for the purpose of furthering the unlawful enterprise.[8]

---

[5] *See People v Meadows,* 26 Mich App 675, 678; 182 NW2d 721, 722 (1970).

[6] In *People v Sims,* 23 Mich App 194; 178 NW2d 667 (1970), each of the three men in the automobile was seated next to or over the place where pistols were later found to have been secreted. Compare *People v Iaconis,* 29 Mich App 443, 449; 185 NW2d 609, 611–612 (1971), where the defendants were in close proximity to the heroin when the police entered.

[7] The defendant implicated himself in the "carrying" of the concealed weapon in *People v Morris,* 8 Mich App 688, 691; 155 NW2d 270, 271–272 (1967), and in *People v Moceri,* 294 Mich 483, 484; 293 NW 727, 728 (1940). The defendant was implicated by a co-defendant in *People v Jerome I Smith,* 21 Mich App 717; 176 NW2d 430 (1970).

[8] *See People v Pearce,* 20 Mich App 289, 292–293; 174 NW2d 19, 21–22 (1969); *People v Townsend,* 25 Mich App 357, 362, fn 6; 181 NW2d 630, 632 (1970).

In this case, no ammunition was found near Smith's third row seat in the van—the ammunition was in the front seat. The unloaded M-1 rifle under the second seat was neither in "close proximity" nor perhaps—the van was stopped at 11:20 p.m.—even visible to Smith (see fn 1). Neither Smith nor the other defendants made any statements or movements incriminating him. There is no evidence which would support a finding that Smith and the other men were engaged in a common unlawful enterprise, part of which was carrying a gun.

There was, in summary, no evidence establishing Smith's participation in *carrying* the concealed weapon beyond his presence in the van and his knowledge—which I have assumed—that the gun was in the van. Knowledge that a gun is in an automobile, without more, will not support a conviction for carrying a concealed weapon. As the people failed to establish an element of the offense, the record does not support the magistrate's decision binding Smith over for trial.

The disposition of this case which I think to be sound makes it unnecessary for me now to consider whether an M-1 rifle, over 30 inches in length, is a "dangerous weapon" within the meaning of this statute.