PEOPLE v SUMMERS

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—SEARCH WARRANTS—MAGISTRATES—IS-
SUANCE OF SEARCH WARRANT—STATUTES.

A magistrate is only authorized to issue warrants to search
certain places and once a warrant has actually been issued it
cannot be broadly interpreted (MCLA 780.651; MSA 28.1259[1]).

2. SEARCHES AND SEIZURES—SEARCH WARRANTS—PARTICULARITY—
SERVING OFFICERS—SCOPE OF SEARCH WARRANT.

A search warrant must describe, with particularity, the premises
to be searched and the property to be seized, and the executing
officers must narrowly follow that description; where a magis-
trate could have issued a warrant to search any individual
found on the premises for which a search warrant has been
issued, but did not do so, the "particularity" requirement
prevented the police officers serving the warrant from legally
extending the scope of the warrant so as to authorize a search
of a defendant's person.

3. SEARCHES AND SEIZURES—SEARCH WARRANTS—PREMISES—EXECU-
TION OF SEARCH WARRANT—PRESENCE UPON PREMISES.

It is required, at the very least, that a person be present upon the
premises being searched in the execution of a valid search
warrant for search of the premises before that person can
properly be searched without the issuance of another search
warrant and where a defendant was stopped outside of a house,
which was the subject of a search warrant, by the police officers

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures § 61.
[2] 68 Am Jur 2d, Searches and Seizures §§ 73–82.
[3] 68 Am Jur 2d, Searches and Seizures §§ 107–115.
[4, 12, 14] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 45, 47.
[5–7] 68 Am Jur 2d, Searches and Seizures § 111.
[8] 5 Am Jur 2d, Arrest §§ 2, 23.
[9, 11] 5 Am Jur 2d, Arrest §§ 24, 32.
[10, 13] 5 Am Jur 2d, Arrest §§ 69–94.

executing the warrant and taken inside, this factor cannot be found.

4. CRIMINAL LAW—NARCOTICS—POSSESSION OF NARCOTICS—DWELL-
   ING HOUSE—JOINT CONTROL.
   Evidence of joint control of a dwelling house is insufficient to sustain a conviction for knowingly possessing an illicit drug found therein without some further evidence connecting a defendant with that drug.

5. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—QUANTUM OF
   PROOF—GUILT BEYOND A REASONABLE DOUBT—ILLICIT DRUGS—
   SEARCH OF PREMISES—ADDITIONAL INDEPENDENT FACTOR.
   The quantum of proof in assessing probable cause to arrest is different than for guilt beyond a reasonable doubt, however, there still must be some evidence of the type or quality necessary to support a conviction before probable cause can be established; therefore, where illicit drugs are found during a search of premises owned by a defendant, there must be at least some evidence of an additional independent factor linking the defendant with the drugs, although the weight to be given to the factor need be less to support an arrest than is needed to support a conviction.

6. CRIMINAL LAW—NARCOTICS—DEFENDANT'S PREMISES—ADDITIONAL
   INDEPENDENT FACTORS.
   Independent factors which have been found to link a defendant to drugs found on the defendant's premises include: (1) attempted flight and destruction of the evidence by the defendant; (2) close proximity to the narcotics; (3) the existence of reliable information that the defendant is trafficking in drugs of the type found in plain view; (4) the linking of the defendant directly to the specific property in which the drugs are found, such as through the defendant's admission of its ownership; and (5) knowledge by the defendant of the precise location of the drugs.

7. ARREST—CONSTITUTIONAL LAW—NARCOTICS—HEROIN—POSSESSION
   —OWNER AND OCCUPANT—PREMISES—SEARCH INCIDENT TO AR
   REST.
   Police officers lacked probable cause to arrest a defendant for knowingly possessing drugs found in the basement of the defendant's house where the defendant was known to be the owner and an occupant of the house, the drugs were found in an out-of-the-way place in that house, and where there was no other evidence linking the defendant to those drugs at the time of his arrest; therefore, where such an arrest was made without

probable cause to arrest, a seizure of heroin found on the defendant's person cannot be justified as the product of a search incident to an arrest.

DISSENT BY BASHARA, J.

8. ARREST—ARREST WITHOUT WARRANT—PEACE OFFICERS—REASONABLE CAUSE—FELONIES—STATUTES.

*A peace officer may arrest a person without a warrant when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed the felony (MCLA 764.15[d]; MSA 28.874[d]).*

9. ARREST—PROBABLE CAUSE—ARRESTING OFFICERS—PECULIAR CIRCUMSTANCES—CASE-BY-CASE ANALYSIS.

*Each case involving the quantum of information which constitutes probable cause to arrest must be analyzed in light of the peculiar circumstances facing the arresting officer.*

10. ARREST—POLICE OFFICERS—FELONIES—LEGAL SCHOLARS—REASONABLE AND PRUDENT MEN.

*A police officer makes his determination as to whether a person arrested has committed a felony not as a legal scholar, but as a man of reasonable prudence and caution.*

11. ARREST—PROBABLE CAUSE—FACTUAL AND PRACTICAL CONSIDERATION—REASONABLE AND PRUDENT MEN—LEGAL TECHNICIANS—CASE PRECEDENT.

*One deals in the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act, in assessing probable cause for arrest.*

12. SEARCHES AND SEIZURES—INFERENCES—CONTROL OF PREMISES—CONTROL OF HEROIN—COMMON AREA OF HOUSE—OWNERSHIP OF PREMISES.

*It was reasonable for the police to infer that a defendant controlled certain premises as well as any heroin found therein, although there were approximately six other people in the house, where a search by police, pursuant to a search warrant, uncovered heroin in a common area of the house and the defendant had already admitted that he owned and lived in the house.*

13. ARREST—PROBABLE CAUSE—POLICE OFFICERS—ELEMENTS OF OFFENSE—SUFFICIENT EVIDENCE TO CONVICT—COURTS.

*A police officer when determining probable cause to arrest need not analyze the elements of an offense to determine whether*

*there is sufficient evidence to convict; this is clearly the function of the courts.*

14. ARREST—CONSTITUTIONAL LAW—CONVICTION—QUANTUM OF PROOF
—PROBABLE CAUSE TO ARREST—POSSESSION OF NARCOTICS—CASE
PRECEDENT.

*The quantum of proof needed to convict is greater than that required for probable cause to arrest; therefore, a prior determination that there was insufficient evidence to find a defendant guilty of possession of narcotics beyond a reasonable doubt where the drugs were discovered in a common area of a house which was under the joint control of a number of persons, including the defendant, does not mean that there was no probable cause to arrest.*

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted October 10, 1975, at Detroit. (Docket No. 22802.) Decided April 26, 1976. Leave to appeal applied for.

George Summers was charged with possession of heroin. The defendant's motion to suppress certain evidence because of an illegal search was granted. The information was quashed, and the defendant was ordered discharged. The people appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

Before: BRONSON, P. J., and BASHARA and M. F. CAVANAGH, JJ.

BRONSON, P. J. Defendant was charged with possession of heroin, contrary to MCLA 335.341(4)(a); MSA 18.1070(41). Prior to trial, defendant filed a motion to suppress the heroin which was the

subject of the prosecution on grounds that it was the product of an illegal search. The trial judge granted that motion, quashed the information, and ordered defendant dismissed. The prosecutor appeals here.

The search in question occurred on the night of October 10, 1974. A team of Detroit police officers were dispatched that night to execute a search warrant for a house located at 9356 Mansfield in the City of Detroit. The warrant authorized a search of the premises, and named defendant as the owner of the house.[1] As the police converged

───────

[1] A copy of the warrant does not appear in the record. However, the discussion between the prosecutor, defense counsel, and the judge at the preliminary examination indicates the scope of the search warrant:

"*Mr. McCloskey [the prosecutor]:* Under the search warrant, your Honor, they had the authority to search the entire premises.

"*The Court:* That's in the search warrant?

"*Mr. McCloskey:* Do you have a copy of the search warrant?

"I would assume that they exceeded their range, your Honor, but that might be proper subject of a different type of hearing in this court. But I would—I don't think that question has been raised.

"Yes, your Honor, it is generally search the premises known as 9356 Mansfield, which is a 2-story single dwelling. And then it goes on to describe the rest of the—more specifically the type of dwelling it is, and exactly where it is located.

"But it's to search the entire premises.

"*The Court:* It says that, entire premises?

"*Mr. McCloskey:* No, it says premises, your Honor, but I think that would assume the entire premises, it doesn't limit it to the first floor or the second floor or any specific room in the place. I think that's a reasonable reading on the face of the search warrant, that it means the entire premises, since it is not limited.

                    *  *  *

"*Mr. Mitchell [defense counsel]:* Your Honor, I don't think it [the narcotics seized from the person of defendant] should be admitted. * * * If they had a search warrant they could just serve the search warrant. There is nothing in the search warrant that says they had to search the person of Mr. Summers out on Mansfield. The search warrant was to search the premises. Now they went—

"*The Court:* What about the fact he was coming out as they were going to execute the search warrant?

"*Mr. Mitchell:* Well he still was not in the—the search warrant is to search the premises, not to search this man. They had no—they

on the above location, a man later identified as defendant was observed exiting the house. Patrolman Roger Lehman stopped defendant, and identified himself as a police officer.

When the police learned that defendant lived in the house, they ordered him to unlock the front door. Defendant responded that he did not have his keys with him, and that he would have to use the intercom to convince someone inside to open the front door. Defendant spoke to a person named Dwight over the communication system, instructing Dwight to let him into the house. A few minutes later, Dwight Calhoun appeared at the door. Patrolman Lehman identified himself as a police officer, but Calhoun just stood there. When Lehman tried to open the locked storm door, Calhoun slammed the inside door shut.

Three of the officers quickly moved up and knocked down the front door. As they did so, Officer Lehman observed Calhoun running toward a downstairs bedroom. Lehman started chasing Calhoun after instructing another officer, Anthony Conant, to bring defendant inside. Conant escorted defendant into the house as the other members of the police team "secured" the house.[2] Patrolman

had no—even after the man got in the house they had no cause to search the man."

The prosecutor has never argued here or below that the warrant expressly authorized a search of the person of defendant.

[2] Officer Conant was never directly asked whether defendant voluntarily went into the house. A fair reading of the testimony, however, indicates that he had little choice. For example, on cross-examination of Conant, the following exchange occurred:

"*Q. [defense attorney]:* All right. Well when you came around to the front of the house you did see—did you see Mr. Summers, is that right?

"*A.* I did.

"*Q.* And Mr. Summers was outside of the house, is that right?

"*A.* He was.

"*Q.* Now Mr. Summers was outside of the house, and you took him back in the house, is that right?

"*A.* I did.

Lehman meanwhile pursued Calhoun into the bed-
room, and saw Calhoun toss a "pack" onto the bed.
The "pack" was retrieved and was found to con-
tain suspected heroin. Calhoun was placed under
arrest and escorted back into the living room.
Other persons, variously described as five, six, or
eight in number, were found in the house and
brought into the living room by other police offi-
cers.

After Calhoun was brought into the living room,
and the house was otherwise "secured", Conant
proceeded to search the whole house. He found
two plastic bags of suspected narcotics under the
bar in the basement. When Conant returned, de-
fendant again indicated upon questioning that he
was the owner of the house and lived there. De-
fendant was then placed under arrest and
searched. Suspected heroin was found in his
pocket. All of the other persons in the house were
also searched, but there is no indication that any-
thing was found on their persons. Laboratory tests

"*Q.* Now he wasn't a member of your crew, was he?

"*A.* No, he was not.

"*Q.* And you didn't think he was going to aid you at all in making
this raid, did you?

"*A.* I did not know what he was going to do.

\* \* \*

"*A.* No, I did not. After we gained entry Patrolman Lehman told
me to bring him on inside.

"*Q.* All right. You took him on inside?

"*A.* I did.

"*Q.* Now when you went inside, what did you do immediately after
you got inside?

"*A.* Well I was in the living room with Mr. Summers.

"*Q.* All right. You kept Brother Summers right close to you, is that
right?

"*A.* He was there.

"*Q.* All right. What did you do after you kept him in your close
view like that; did you ever go anyplace else in the house?

"*A.* Not until after the house was secured, then I went to the
basement."

revealed that the envelope found in defendant's pocket contained 8.5 grams of heroin.

Defendant was charged only with possession of the 8.5 grams of heroin found concealed on his person. Consequently, when the search was ruled illegal and the evidence suppressed, the charges against defendant were also dismissed. The prosecutor on appeal contends that defendant was properly searched.

The prosecutor makes three arguments to justify the search of defendant's person. First, the prosecutor argues that the search warrant authorized a search of the "premises", and that all hiding places located inside the house are part of the "premises". Secondly, the prosecutor claims that, even if this was not strictly a "premises search", a person found in the house when the search warrant is issued can in some cases be searched. A search was justified here because of defendant's presence on the premises, his ownership of the premises, and the reasonable expectation that an item sought would be found on his person. Finally, the prosecutor argues that the police had probable cause to arrest defendant when they found a controlled substance in the property owned by him. The search is then justified as incident to that arrest. We reject all of these legal bases for the search, and affirm the trial court.

The prosecutor's first legal theory is based upon MCLA 780.651; MSA 28.1259(1), which authorizes a magistrate to issue a warrant to search any "house, building or other location or place where the property or thing which is to be searched for and seized is situated". The argument goes as follows: Since the clothing of the defendant is a "place where" heroin could be located, the trial judge must have intended to allow a search of the same pursuant to his warrant for the "premises".

The prosecutor misses the point of the statute. MCLA 780.651; MSA 28.1259(1) only *authorizes* a magistrate to issue warrants to search certain places. Once a warrant has actually been issued, it cannot be broadly interpreted. A search warrant must describe the premises to be searched and the property to be seized with particularity, and the executing officers must narrowly follow that description, *Marron v United States,* 275 US 192, 196; 48 S Ct 74, 76; 72 L Ed 231, 237 (1927), *People v Franks,* 54 Mich App 729; 221 NW2d 441 (1974). It is true that the magistrate *could* have issued a warrant to search any individual found on the premises, but he did not do so. The "particularity" requirement prevented the police officers from legally extending the scope of the warrant so as to authorize a search of defendant's person.

The prosecutor argues in the alternative that the courts of other states have allowed the search of individuals found on the premises to prevent the complete frustration of the warrant. Otherwise, it is claimed, occupants would simply conceal contraband upon their person as the police announce their presence. Applying the test found in those cases, the prosecutor states that there was "reasonable cause" for the police to believe defendant had upon his person property subject to the warrant. Particular accent is put on defendant's presence on the scene and his ownership of the house.

Our courts have never explored the extent to which persons found upon the premises as a search warrant is executed can be searched without another warrant. This is not the occasion to decide that issue, for all of the cited cases require at the very least *presence* upon the premises being searched. That factor cannot be found here. The

defendant was stopped outside of the house. There hardly could be any items on his person which were subject to the search warrant, since the items too were outside the designated premises. Taking defendant back inside did not change the situation. Even if the police acted legally in doing so, an issue we do not decide here, failure to search defendant's person certainly would not "frustrate" the execution of the warrant. There could be little fear that items in the house would be taken and concealed by defendant, who was being detained and watched by Officer Conant.

The prosecutor's final claim is that the police had probable cause to arrest defendant for possession of the narcotics found in the basement of the house. If that contention is true, then the police properly searched the person of defendant incident to that arrest. The trial judge, however, ruled that the police lacked probable cause to arrest the defendant. He found *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972), to be controlling here, and we agree.

In *Davenport,* police officers went to a house where defendant resided with three other persons for the purpose of executing a search warrant for those premises. As the police broke down the door to gain entry, they observed the defendant running upstairs with a small box. The police reached an upstairs bathroom in time to retrieve three envelopes and a bit of loose marijuana as the defendant attempted to flush them down the toilet. Marijuana was also found in those envelopes. A search of the whole house was then conducted, and a bag of narcotics paraphernalia and .26 grams of heroin were found in the basement. Both items were at the bottom of a barrel of soiled clothes, and the heroin was contained in a prescription

bottle, bearing defendant's name, for another, non-narcotic drug.

The Court in *Davenport* held that there was insufficient evidence to support a jury verdict convicting Davenport of possession of the .26 grams of heroin. Judge, now Justice LEVIN, writing for the Court, expressed the reasoning of the panel as follows:

"Davenport cannot be convicted on the theorem that *someone* must have been in possession of the heroin.

"Davenport's residence in the house and the presence in the bag of a plastic bottle carrying a label bearing his name were the only evidence connecting him to the heroin found in the brown bottle. Four persons lived in the house. It is not reasonable to infer from the fact that Davenport was one of the occupants that he—rather than Phillips or Brown or Green—was the person who placed the capsules in the brown bottle. In addition to the plastic bottle labeled with Davenport's name, there were two plastic bottles bearing the name of one of the other residents, Ardis Phillips. There was no evidence that the brown bottle, the bag, or the barrel belonged to Davenport. Clearly there were inno-. cent theories—unrebutted by any evidence—which accord with the facts. It is as likely that Ardis Phillips or anyone else living in the house, who would have had equal access to the basement, was in possession of the heroin.

"More than mere association must be shown to establish joint possession. 'An additional independent factor linking the defendant with the narcotic must be shown.' " 39 Mich App 252, 256–257. (Emphasis supplied, footnotes and citations omitted.)

While the Court found there to be sufficient evidence to find defendant guilty beyond a reasonable doubt of possession of the marijuana, a general verdict required reversal.

Davenport stands for the proposition that joint

control of a dwelling house is insufficient to sustain a conviction for knowingly possessing an illicit drug contained therein without some further evidence connecting the defendant with that drug. The prosecutor accurately points out that Davenport was directly concerned with guilt beyond a reasonable doubt, while the present situation involves the lesser "probable cause" standard. However, the principles of *Davenport* still apply.

In assessing probable cause, the quantum of proof is different, but there still must be some evidence of the type or quality necessary to support a conviction. That concept was well stated by Justice Levin in his dissenting opinion to *People v Smith,* 49 Mich App 630, 639–640; 212 NW2d 768 (1973), *rev'd on other grounds,* 393 Mich 432; 225 NW2d 165 (1975), in the context of an arrest for carrying a concealed weapon:

"The majority apparently agree that the evidence is insufficient to convict Smith, but hold that it is adequate to support the binding-over decision. The standard of jury persuasion is indeed higher than the standard which guides the magistrate. But we are not concerned with the *weight* to be given an inference in assaying guilt or innocence, but rather with a question of law: Should the trier of fact be permitted to infer from the evidence that Smith was carrying a concealed weapon? If the answer to that question is, as I believe, that the trier of fact should not be permitted to draw that inference, then the people have failed to establish an element of the offense." (Emphasis supplied.)

There must be at least some evidence of an additional independent factor linking the defendant with drugs found on the premises, although the weight to be given to the factor need be less to support an arrest.

That concept is illustrated by *Johnson v United*

*States,* 333 US 10; 68 S Ct 367; 92 L Ed 436 (1948). In that case, a Seattle police narcotics officer received information that unknown persons were smoking opium in the Europe Hotel. Federal narcotics agents were called and accompanied the Seattle police officer to the hotel. A strong odor of burning opium was detected outside room number 1. The agents knocked, and a voice inside inquired as to who was there. The police officer identified himself, and there was a slight delay during which noise was heard in the room. Defendant opened the door, and the police officer told defendant he wanted to talk to her. She acquiesced and admitted the officer. Defendant, found to be the sole occupant of the room, was "arrested" and the room was searched. Opium and smoking apparatus were found.

Although the defendant clearly had at least joint control of the premises and drugs were determined to be present there, the Supreme Court held that no probable cause existed to support her arrest. The required additional factor, that she was the sole occupant of the room, was not discovered until after the defendant was arrested:

"The Government, in effect, concedes that the arresting officer did not have probable cause to arrest petitioner until he had entered her room and found her to be the sole occupant. It points out specifically, referring to the time just before entry, 'For at that time the agents did not know whether there was one or several persons in the room. It was reasonable to believe that the room might have been an opium smoking den.' And it says, ' * * * that when the agents were admitted into the room and found only petitioner present they had a ' reasonable basis for believing that she had been smoking opium and thus illicitly possessed the narcotic.' Thus the Government quite properly stakes the right to arrest, not on the informer's tip and the smell the

officers recognized before entry, but on the knowledge that she was alone in the room, gained only after, and wholly by reason of, their entry of her home. It was therefore their observations inside of her quarters, after they had obtained admission under color of their police authority, on which they made the arrest.

"Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do." 333 US 10, 16, 17. (Footnotes omitted.)

Johnson, then, indicates that the quality of the evidence must be examined in making the probable cause determination.

Certain additional factors found to be sufficient to link the defendant to drugs found on the premises reappear frequently in the cases. These include: (1) attempted flight and destruction of the evidence by the defendant, *People v Davenport, supra,* (2) close proximity to the narcotics, *People v Davenport, supra,* 256, fn 4; *Ker v California,* 374 US 23, 36, 37; 83 S Ct 1623; 10 L Ed 2d 726 (1963), *Commonwealth v Anderson,* 224 Pa Super 19, 23; 302 A2d 504, 506 (1973), (3) the existence of reliable information that defendant is trafficking in drugs of the type found in plain view, *Davis v United States,* 327 F2d 301 (CA 9, 1964), (4) the linking of defendant directly to the specific property in which the drugs are found, such as through his admission of its ownership, *Carlo v United States,* 286 F2d 841 (CA 2, 1961), *cert den,* 366 US 944; 81 S Ct 1672; 6 L Ed 2d 855 (1961), and (5) knowledge by the defendant of the precise location of the drugs, *People v Davenport, supra,* 256, fn 4. There are undoubtedly other proper factors, but these are the ones most frequently appearing.

In the instant case, none of those additional factors were present. Defendant was known to be the owner and an occupant of the house, and

drugs were found in an out-of-the-way place in that house. However, there was no other evidence linking defendant to those drugs at the time of his arrest. We have the same set of facts as described in *Davenport*—mere joint occupancy by the defendant with others of a dwelling in which illegal drugs are located. It is certainly "as likely" that Dwight Calhoun, or one of the other persons on the premises, placed those drugs in the basement.

Under those circumstances, we must hold that the police officers had no probable cause to arrest defendant for knowingly possessing the drugs found in the basement of his house. The seizure of the heroin involved here cannot be justified as the product of a search incident to arrest. Since the other possible legal bases for the search have also been rejected, we must uphold the decision of the trial judge suppressing the evidence and quashing the information.

Affirmed.

M. F. CAVANAGH, J., concurred.

Bashara, J. *(dissenting).* I respectfully dissent from my Brothers' opinion. I believe there was probable cause to arrest the defendant, and that the search of his person was a lawful search incident to an arrest.

In Michigan a peace officer may arrest a person without a warrant "when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe [that] such person has committed it". MCLA 764.15(d); MSA 28.874(d). Each case must be analyzed in light of the peculiar circumstances facing the officer. *Wong Sun v United States,* 371 US 471, 479; 83 S Ct 407; 9 L Ed 2d 441 (1963), *People v Orlando,* 305 Mich 686, 689; 9 NW2d 893 (1943).

Case law teaches that the police officer makes his determination as to whether the person arrested has committed a felony not as a legal scholar, but as a man of reasonable prudence and caution. *People v Harper,* 365 Mich 494, 501; 113 NW2d 808 (1962), *cert den* 371 US 930; 83 S Ct 302; 9 L Ed 2d 237 (1962). Likewise, *Draper v United States,* 358 US 307, 313; 79 S Ct 329; 3 L Ed 2d 327 (1959), recognized that in assessing probable cause one deals in "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

In the instant case the police were armed with a warrant to search the premises at 9356 Mansfield for narcotics. This indicates the police were aware of narcotics activity taking place at that address.

On entry to the home the police immediately arrested one Calhoun who had attempted to discard a "pack" of heroin. A search of the premises uncovered more heroin in a common area of the home. At that point, although there were approximately six other citizens in the house, the police arrested only the defendant, who had previously admitted that he lived there and was the owner. It was reasonable for the police to infer that he controlled the premises as well as any heroin found there. See *People v Hintz,* 62 Mich App 196; 233 NW2d 228 (1975).

It is my opinion that the majority has analyzed probable cause under the wrong standard. It is important to remember that a policeman is not a lawyer. He need not analyze the elements of the offense to determine whether there is sufficient evidence to convict. *Wong Sun v United States, supra.* This is clearly the function of the courts. See *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972).

My Brothers' reliance on *People v Davenport,*

*supra,* is misplaced. In *Davenport,* Justice (then Judge) LEVIN determined there was insufficient evidence to find the defendant guilty beyond a reasonable doubt of possession of narcotics. The drugs were discovered in a common area of a house which was under the joint control of a number of persons including the defendant. This does not mean there was no probable cause to arrest. The quantum of proof needed to convict is greater than that required for probable cause to arrest. Justice (then Judge) LEVIN recognized the difference in *People v Degraffenreid,* 19 Mich App 702, 708 n 2; 173 NW2d 317 (1969), when he stated:

> "While mere presence, even with knowledge that a criminal offense is about to be or is being committed, is not enough to support a conviction of a person as an aider or abettor under the statute * * * such presence is enough to establish probable cause justifying an arrest." (Citations ommitted.)

Finally, I cannot agree that *Johnson v United States,* 333 US 10; 68 S Ct 367; 92 L Ed 436 (1948), is dispositive. In that case the government argued that probable cause existed to arrest once the police discovered the petitioner was the sole occupant of the room. The United States Supreme Court in a five to four decision held that the police illegally gained entrance to the room under color of police authority. Therefore, the arrest could not be justified by any facts that occurred after they gained entrance. The Court did not reach the issue of whether probable cause to arrest existed where petitioner was the sole occupant of a room where narcotics were found. Nor did it reach the crucial issue of the instant case, as to whether there

would have been probable cause to arrest had there been more than one occupant in the room.

I would reverse the trial judge and reinstate the charges against the defendant.